**EX PARTE Roger Dale CARTER, Applicant**

**NOS. WR-85,060-01 & WR-85,060-02**

Court of Criminal Appeals of Texas.

DELIVERED: June 7, 2017

FOR APPLICANT PRO SE: Roger Dale Carter, Polunsky Unit—TDC # 1592078, 3872 FM 350 S., Livingston, TX 77351.

ATTORNEYS FOR THE STATE: Brent Chapell, Assistant District Attorney, 207 W. Phillips, Second Floor, Conroe, TX 77301, Stacey Soule, Austin, TX.

## OPINION

Keasler, J., delivered the judgment of the Court and an opinion, in which Keller, P.J., and Hervey, and Yeary, JJ., joined and Newell, J., joined in part.

In these habeas corpus applications, Roger Carter asserts the trial judge improperly cumulated, or "stacked," his burglary sentence and credit-card-abuse sentences. We filed and set Carter's applications to address whether his claims are cognizable in a habeas corpus proceeding. Because Carter could have appealed his bare statutory violation and record-based claims, we conclude they are not cognizable and deny Carter's applications.

### I.

In two separate indictments, Carter was charged with burglary of a habitation and two counts of credit card abuse. Each indictment contained enhancement paragraphs. Without a plea bargain with the State, Carter pleaded guilty to all offenses and true to the enhancement paragraphs. Finding the enhancements to be true, the judge sentenced Carter to fifty years' confinement for the burglary and five years' confinement for each credit card abuse count. The judge ordered Carter to serve the credit-card-abuse sentences simultaneously, but only after the burglary sentence's expiration. The court of appeals rejected Carter's challenges to the judge's sentencing him as a habitual offender, and it affirmed the judgments.[1]

Approximately five years after the court of appeals' mandate issued, Carter filed these applications for writs of habeas corpus asserting that, among other things, his sentences were improperly ordered to run consecutively. This Court remanded Carter's applications for findings of fact and conclusions of law on this ground.[2] The habeas judge found that Carter's improper-cumulation claim "is based on the record and could have been, but was not, raised on direct appeal." Because Carter could have raised this claim on direct appeal, the judge concluded that the claim was not cognizable in a habeas corpus proceeding. Accordingly, the judge recommended denying Carter's improper-cumulation claim.

### II.

When a defendant is found guilty of more than one offense arising out of the same criminal episode and those offenses are prosecuted in a single criminal action, Texas Penal Code § 3.03(a) states, in relevant part, that "the sentences shall run concurrently."[3] In *LaPorte v. State*, this Court held that a defendant is prosecuted

1. *Carter v. State*, Nos. 09-09-00358-CR & 09-09-00372-CR, 2010 WL 4156443 (Tex. App.—Beaumont Oct. 20, 2010, no pet.) (mem. op., not designated for publication).

2. *Ex parte Carter*, Nos. WR-85,060-01 & WR-85,060-02 (Tex. Crim. App. Jun. 26, 2016) (not designated for publication).

3. TEX. PENAL CODE § 3.03(a) (West Supp. 2016).

in "a single criminal action" whenever allegations and evidence of more than one offense arising out of the same criminal episode—as Texas Penal Code Chapter 3 defines that term—are presented in a single trial or plea proceeding.[4] A single trial or plea proceeding may exist regardless of whether the allegations are found in a single charging instrument or several or the State provided notice of its intent to try several charging instruments together.[5] The *LaPorte* Court further held that "[a]n improper cumulation order is, in essence, a void sentence, and such error cannot be waived. A defect which renders a sentence void may be raised at any time."[6]

■ While we reaffirm *LaPorte*'s statutory interpretation of "a single criminal action," we overrule the opinion's holding that sentences subject to an improper cumulation order are themselves "void." *LaPorte* arrived at this conclusion by mistakenly conflating the sentences with the cumulation order. In a bare improper-cumulation order context, the infirmity lies in the order setting how the sentences will be served, not in the assessed sentences themselves. Labeling as void sentences falling within the statutorily prescribed range of punishment is inaccurate. An improper cumulation order may be remedied by reformation on appeal or, in the proper circumstance, a judgment *nunc pro tunc*.[7] Because the improper cumulation order is subject to such reme-

dies, the sentences cannot properly be declared void.[8]

■ We further conclude that *LaPorte*'s holding that an improper-cumulation claim "may be raised at any time" does not control an improper-cumulation claim's cognizability in the habeas corpus context. This Court's opinion in *Ex parte McJunkins* would have supported Carter's assertion of an improper-cumulation point of error on appeal.[9] The *McJunkins* opinion reaffirmed *LaPorte*'s holding insofar as LaPorte's improper-cumulation claim was properly before the Court in that case, not because his sentences were void, but by placing the rights § 3.03 conferred to a defendant into *Marin v. State*'s procedural-default rubric.[10] The *McJunkins* Court held that § 3.03 confers a *Marin* waiver-only right—a right that must be implemented unless affirmatively waived.[11] *McJunkins* noted that the record in *LaPorte* did not contain a waiver, and therefore LaPorte's claim was viable on appeal.[12]

■ *LaPorte*'s broad holding—notably made in the context of an appeal—conflicts with this Court's established habeas corpus jurisprudence. Relying heavily on the axiom "The Great Writ should not be used in matters that should have been raised on appeal," this Court in *Ex parte Townsend* held that "[e]ven a constitutional claim is forfeited if the applicant had the opportu-

---

4. 840 S.W.2d 412, 414–15 (Tex. Crim. App. 1992).

5. *Id.* (overruling *Caughorn v. State,* 549 S.W.2d 196 (Tex. Crim. App. 1977)).

6. *Id.* at 415.

7. *Rhodes v. State,* 240 S.W.3d 882, 888 (Tex. Crim. App. 2007).

8. *See id.*

9. 954 S.W.2d 39, 41 (Tex. Crim. App. 1997) (op. on reh'g).

10. 954 S.W.2d 39, 40–41 (Tex. Crim. App. 1997) (op. on reh'g) (referring to *Marin v. State,* 851 S.W.2d 275, 278–280 (Tex. Crim. App. 1993)).

11. *See id.*

12. *See id.* at 41.

nity to raise the issue on appeal. This is because the writ of habeas corpus is an extraordinary remedy that is available only when there is no other adequate remedy at law."[13] Because of its sweeping language, *Townsend* is viewed as a defining point in our habeas corpus jurisprudence, but its holding was hardly new: If an applicant could have appealed the issue he now asserts on habeas, the merits of his claim should not be reviewed.[14]

Townsend was sentenced to ten years' confinement to be served in the Texas Department of Criminal Justice's Special Alternative Incarceration Program ("Boot Camp").[15] After Townsend successfully completed Boot Camp, the judge suspended Townsend's sentence and placed him on probation for the remainder of his term.[16] While on probation, Townsend was found guilty of murder and sentenced to sixty years' confinement. On the same day Townsend was sentenced for the murder, the judge revoked Townsend's probation and imposed a sentence of ten years' confinement to begin after the sixty-year sentence.[17] Townsend challenged the cumulation order in an application for a writ of habeas corpus. Concluding that Townsend had an adequate remedy on direct appeal

but failed to exercise it, we held he forfeited his claim on collateral review.[18] In *Townsend*, we denied the improper-cumulation claim and reaffirmed "our decisions holding that, when a defendant has an adequate remedy at law for his claim, he may not raise the claim in an application for a writ of habeas corpus."[19]

■ Like Townsend, Carter could have pursued his improper-cumulation claims on appeal instead of raising them for the first time in this habeas corpus proceeding. In fact, Carter did appeal his sentences, albeit on other grounds. But nothing prevented him from raising on direct appeal the record-based claims he now asserts. Because the judge imposed cumulative sentences at punishment and the cumulation order appeared in the original judgments, Carter did not need to resort to collateral proceedings to supplement the record to support his claims. And as a *Marin* category two, waiver-only right, Carter's improper-cumulation claims were not subject to procedural default by inaction and could have been argued in his appeal.[20] Unlike *Marin* category-one requirements and prohibitions, Carter's claims may not be asserted for the first time in an application for a

---

13. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) (citations omitted); *accord Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004).

14. *See generally Ex parte Wilcox*, 128 Tex. Crim. 146, 79 S.W.2d 321, 321 (Tex. Crim. App. 1935) ("Habeas corpus is an extraordinary writ), and the general rule is that it does not lie where relief may be had, or could have been procured by resort to another remedy. It is also settled that use of the writ will not be permitted as a substitute for appeal.") (citations omitted); *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978) ("It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.' "); *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); 2 THOMAS CARL SPELLING, A

TREATISE ON EXTRAORDINARY RELIEF IN EQUITY AND AT LAW, § 1151 (Boston, Little, Brown & Co. 1893); 1 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE AS ADMINISTERED IN ENGLAND AND AMERICA § 49 (Boston, Little, Brown & Co. 1918).

15. *Ex parte Townsend*, 137 S.W.3d at 80.

16. *Id.*

17. *Id.*

18. *Id.* at 81.

19. *Id.* at 82.

20. *See Ex parte McJunkins*, 954 S.W.2d at 40–41.

writ of habeas corpus.[21] By failing to assert his claims in the court of appeals, Carter forfeited them for habeas corpus purposes. His improper-cumulation claims, therefore, are not cognizable on collateral review.[22]

■ Carter's improper-cumulation claims are also not cognizable for a much simpler, basic reason: they assert bare statutory violations. Continuing to extend *LaPorte*'s holding to collateral review cases overlooks our own admonition that "[a] writ of habeas corpus is available only for relief from jurisdictional defects and violations of constitutional or fundamental rights." [23] Carter's habeas corpus applications allege that the judge abused her discretion by "stacking" his sentences because "[a]ll three charges were of the same criminal episode." From our reading of Carter's applications and their use of § 3.03's "same criminal episode" language,[24] we interpret Carter's complaint to be based on a violation of § 3.03. He does not allege a constitutional violation and he cannot identify a constitutional right to concurrent sentences.

■ In *Ex parte McCain*, this Court held that a violation of Texas Code of Criminal Procedure Article 1.13(c), requiring a trial judge to appoint counsel to a defendant before the defendant may waive a jury trial, was not cognizable on habeas corpus.[25] Although Article 1.13(c) was a mandatory statute, this Court held that the failure to appoint counsel before McCain's jury waiver did not encompass a fundamental or constitutional error.[26] While procedural errors or statutory violations may be reversible error on direct appeal, they are not necessarily fundamental or constitutional errors that entitle an applicant to habeas corpus relief.[27] The *McCain* Court further noted that "most provisions in the Code of Criminal Procedure are 'mandatory' in that they state a trial court 'must' or 'shall' do something in a particular matter." [28] Despite § 3.03(a)'s command that sentences shall run concurrently, its violation is not cognizable on habeas corpus.[29]

21. *Cf. Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014) (holding that a claim of lack of jurisdiction is not subject to *Townsend*'s holding because jurisdiction is a *Marin* category one systemic requirement that operates independent of litigants' wishes); *Ex parte Sledge*, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) (noting that jurisdictional claims are routinely reviewed on initial applications even if raised for the first time in collateral proceeding).

22. *See Ex parte Townsend*, 137 S.W.3d at 81.

23. *Ex parte McCain*, 67 S.W.3d 204, 207 (Tex. Crim. App. 2002) (citing, among other cases, *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989)).

24. Tex. Penal Code § 3.03(a) (providing the general rule that, "When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, ... [the sentences shall run concurrently]").

25. *Id.* at 206.

26. *Id.* at 210.

27. *Id.*

28. *Id.*

29. *See also Ex parte Douthit*, 232 S.W.3d 69, 74 (Tex. Crim. App. 2007) (violations of former prohibition on jury waivers in capital cases); *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993) (violations of mandatory provision concerning signing of written jury waiver contained in art. 1.13 not cognizable on writ of habeas corpus); *Ex parte Tovar*, 901 S.W.2d 484, 485 (Tex. Crim. App. 1995) (failure to give mandatory admonishments regarding deportation required under Art. 26.13(a)(4) is cognizable on writ of habeas corpus only if trial judge wholly failed to give warnings and defendant's plea was constitutionally involuntary as a consequence).

### III.

■ Having concluded that Carter's improper-cumulation claims are not cognizable on collateral review, we reject them. Carter's applications also assert that he was denied ineffective assistance of counsel. He alleged twenty-three individual bases for his ineffective-assistance-of-counsel claim. Despite liberally interpreting Carter's *pro se* applications, we cannot find any contention, whether inartfully pleaded or not, that trial counsel was deficient for failing to object to consecutive sentencing. Although we embrace liberal interpreting *pro se* applications, as a court of law we may not create claims that the Court *sua sponte* believes meritorious when they are not arguably present in an applicant's pleadings. We further conclude that Carter's ineffective-assistance-of-counsel claim and remaining claims are without merit. Carter's applications are denied.

Yeary, J., filed a concurring opinion.

Newell, J., filed a concurring opinion, in which Hervey, J., joined.

Alcala, J., filed a dissenting opinion, in which Richardson, J., joined.

Richardson, J., filed a dissenting opinion.

Keel, J., concurred.

Walker, J., dissented.

Yeary, J. filed a concurring opinion.

I join the plurality's opinion. I write further only to amplify on the plurality's explanation of why Applicant's claim is not cognizable in post-conviction habeas corpus proceedings. The short of it is that a complaint about an unauthorized cumulation order simply does not invoke the kind of systemic requirement or prohibition that we should require of a claim that is not raised for the first time until an application for writ of habeas corpus brought under the auspices of Article 11.07 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 11.07. *See Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993); *Ex parte Moss*, 446 S.W.3d 786, 788-90 (Tex. Crim. App. 2014).

In *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992), the Court declared that "[a]n improper cumulation order is, in essence, a void sentence, and such error cannot be waived. A defect which renders a sentence void may be raised at any time." Today the Court appropriately overrules *LaPorte*'s holding that invalid cumulation orders are void. Plurality Opinion at 3.[1] The question we are left with is whether "an improper stacking order," though it should not necessarily be equated with an unauthorized sentence, should nevertheless be regarded as something that may be "raised at any time," including for the first time in a post-conviction application for writ of habeas corpus. Is an improper stacking order "in essence" the same as an unauthorized sentence—at least for purposes of deciding whether it should be subject to challenge for the first time in a collateral attack even though it could have been brought earlier on appeal?[2] *See Moss*, 446 S.W.3d at 788 (explaining that a claim that the trial court lacked jurisdiction is in the nature of a category one *Marin* issue,

---

**1.** Although Judge Newell does not expressly join all of the plurality's opinion, he does expressly join in its overruling of *LaPorte*. Concurring Opinion at 2. That makes a majority of five votes to overrule *LaPorte*.

**2.** We have long held that a sentence that is unauthorized because it is outside of the applicable range of punishment may be challenged "at any time," including for the first time in an Article 11.07 application for writ of habeas corpus. *Ex parte Rich*, 194 S.W.3d 508, 511-12 (Tex. Crim. App. 2006).

which can be raised for the first time in an initial post-conviction habeas corpus proceeding).

We have recently determined that whether a claim may be raised for the first time in post-conviction collateral attack should be a function of whether that claim invokes category one of the so-called *Marin* categories of complaints: systemic requirements or prohibitions that are recognized by our criminal justice system as "essentially independent of the litigants' wishes." *See Ex parte Sledge*, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) (citing *Marin*, 851 S.W.2d at 279, for the proposition that "[i]t is, of course, axiomatic in our case law that review of jurisdictional claims are cognizable in post-conviction habeas .corpus proceedings. Moreover, we have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking."); *Moss*, 446 S.W.3d at 788-89 (citing *Marin* in support of a holding that an applicant can raise an attack on the subject matter jurisdiction of a convicting court for the first time in a post-conviction writ application, notwithstanding the rule in *Ex parte Townsend*, 137 S.W.3d 79 (Tex. Crim. App. 2004), that a claim that could have been raised on direct appeal, but was not, is forfeited for purposes of collateral attack). Whether an invalid cumulation order is cognizable when raised for the first time in a post-conviction writ application depends, according to this trend, upon whether the system has erected an absolute, nonnegotiable prohibition against the improper cumulation of sentences, such that it would not even be optional with the parties whether to cumulate those sentences.

To me, then, the question in the present case therefore boils down to whether an improper cumulation order violates. some systemic requirement (multiple sentences *must* be made to run concurrently) or systemic prohibition (multiple sentences *may not* be made to run consecutively) that is so critical to the proper functioning of the criminal justice system that we cannot tolerate any deviation from the norm, even at the behest of the parties. I do not believe it can fairly be said that a trial court's decision whether to cumulate sentences implicates a systemic requirement or prohibition in the sense that category one of *Marin* contemplates. It is, at most, a category two waiver-only right. *See* Plurality Opinion at 4 (citing *Ex parte McJunkins*, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997) (op. on reh'g), for the proposition that rights conferred by Section 3.03 of the Penal Code are waiver-only rights under the *Marin* rubric).

As a matter of history and common law, the decision whether to impose separate sentences concurrently or consecutively has been assigned to the trial judge. *Oregon v. Ice*, 555 U.S. 160, 168-69, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). "Texas law gives a much larger role to the jury at sentencing than is traditionally the case in American law, but, in giving the judge the discretionary authority to determine whether sentences should be concurrent or consecutive, Texas follows the approach taken in almost every American jurisdiction." George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 46:146, at 244 (3d ed. 2011). "Texas is one of the few states that allow defendants the privilege, by statute, of opting for jury assessment of punishment. Even so, it is left to the trial court to determine whether multiple sentences will run consecutively or concurrently." *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). That discretion

to cumulate or not is largely—but not entirely—unfettered.

Early on, trial courts in Texas were *required* by statute to cumulate (stack) separate sentences; they had no discretion to do otherwise. *See, e.g., Smith v. State,* 34 Tex.Crim. 123, 123-24, 29 S.W. 774, 775 (1895) ("Nor is there anything in the alleged error of the court making the sentence in this case cumulative of that pronounced against appellant in a preceding conviction. This action of the court is expressly enjoined by statute, and therefore the court did not err in this respect. Code Cr. Proc. [Article] 800 [1879]."); *Culwell v. State,* 70 Tex.Crim. 596, 598, 157 S.W. 765, 766 (1913) (quoting Article 862 of the 1911 Code of Criminal Procedure, which was identical to former Article 800). The Legislature revised the statute in 1919, however, to authorize trial courts to impose either consecutive or concurrent sentences, at their discretion. Acts 1919, 36th Leg., ch. 20, § 1, p. 25, approved Feb. 19, 1919 (amending Article 862 of the 1911 Code of Criminal Procedure). *See, e.g., Carney v. State,* 573 S.W.2d 24, 27 (Tex. Crim. App. 1978) ("There is no 'right' to a concurrent sentence; whether punishment will run concurrently or cumulatively is within the discretion of the trial judge."). That provision may presently be found in Article 42.08(a) of the Code of Criminal Procedure, and it is echoed in Section 3.04(b) of the Penal Code. TEX. CODE CRIM. PROC. art. 42.08(a); TEX. PENAL CODE § 3.04(b). Thus, trial judges in Texas have had the authority to *cumulate* sentences from the beginning;[3] and, since 1919, they have also had the authority to order separate sentences to run *concurrently.* From 1919 on, there was no requirement or prohibition whatsoever with respect to the imposition of mul-

tiple sentences; it was up to the judge, in his unfettered discretion, to make the normative decision whether to impose them concurrently or consecutively. *See Barrow,* 207 S.W.3d at 380 (explaining that the trial judge's cumulation decision "is purely a normative decision, much like the decision of what particular sentence to impose within the range of punishment authorized by the jury's verdict").

That changed—but only to a very limited extent—in 1974. For the first time, in Chapter 3 of the 1973 Penal Code, the Legislature provided for the consolidation for trial of certain offenses, namely, those arising from the "same criminal episode." Acts 1973, 63rd Leg., ch. 387, § 1, p. 883, eff. Jan. 1, 1974. "Same criminal episode" was originally defined narrowly to include only the repeated commission of property offenses, but in 1987, the Legislature significantly expanded upon that definition, to provide for the consolidation for trial of offenses representing "the repeated commission of the same or similar offenses[,]" whether or not they were property offenses. Acts 1987, 70th Leg., ch. 387, § 1, p. 1900, eff. Sept. 1, 1987. A defendant was given the absolute option of insisting upon a severance, and hence, separate trials. But this choice came at a cost. If the defendant would agree to the consolidation, he could insist upon the imposition of concurrent rather than consecutive sentences, thus taking the normative decision away from the trial judge. This was his incentive to agree to consolidation. If, instead, he insisted on severing the separate offenses for trial, the statutory scheme reinstated the trial judge's unfettered discretion to make the normative decision on his own. *See* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL

---

3. Indeed, "[t]he historical record further indicates that a judge's imposition of consecutive, rather than concurrent, sentences was the prevailing practice." *Oregon v. Ice,* 555 U.S. at 169, 129 S.Ct. 711.

PRACTICE AND PROCEDURE § 38:33, at 426 (3d ed. 2011) ("In effect, concurrency of sentences is the defendant's 'reward' for not asserting his or her right to severance of the charges."). Subsequent amendments to Chapter 3 have reinstated the trial judge's discretion to impose either cumulative or concurrent sentences even when certain types of offense have been consolidated for trial, regardless of whether the defendant agrees to the consolidation of offenses or insists on severance;[4] but it remains the case that, for many Penal Code offenses for which the defendant consents to consolidated trials, he may insist upon the imposition of concurrent sentencing upon conviction.

Does that contingent ability to insist upon concurrent sentencing rise to the level of a systemic requirement or prohibition in contemplation of *Marin*? To be sure, the last sentence of Section 3.03(a) of the Penal Code uses mandatory language: when the conditions of Chapter 3 are met, "the sentences shall run concurrently." But the use of mandatory language in a statute does not invariably signal a legislative understanding that the thing required is an indispensable feature of the criminal justice system. *Cf. Ex parte Douthit*, 232 S.W.3d 69, 72 (Tex. Crim. App. 2007) (quoting *Ex parte McCain*, 67 S.W.3d 204, 206 (Tex. Crim. App. 2002), for the proposition that "this Court has repeatedly held that ... deviations from 'mandatory' statutes are not cognizable on a writ of habeas corpus"). Frankly, I do not know whether it is correct to say that the mandatory language of Section 3.03(a) has created (1) a conditional *right* of the defendant to insist on concurrent sentencing, or, instead (2) a limitation on the trial judge's other-

wise broad *authority* to impose cumulative sentencing.

But I do not think this ambiguity in terminology ultimately makes a difference to how we answer the question of which *Marin* category we should place it in. Regardless of whether Section 3.03(a) creates a right of the defendant or a limitation on the trial court's authority, it is a matter that the Legislature has essentially made optional with the parties. The State can avoid the "mandatory" limitation on the trial judge's authority to cumulate sentences by simply opting not to consolidate trials. And the defendant has the option to insist on the severance of trials if he thinks that is to his best advantage, though he thereby loses the Section 3.03(a) ability to insist upon concurrent sentences. Nothing about Chapter 3 of the Penal Code changes the fact that, for the better part of a hundred years in Texas, the decision whether to cumulate sentences has been left to judicial discretion. Nor does the relatively trivial limitation on that discretion, embodied in Chapter 3, remotely suggest that there exists in the criminal justice system *either* a nonnegotiable requirement of concurrent sentencing *or* an absolute prohibition against cumulated sentences. Thus, there is no justification for designating an improper cumulation order—like an unauthorized sentence[5]—to fall within *Marin*'s first category.

Over the years, this Court has occasionally proclaimed that improper cumulation orders are simply not subject to challenge in habeas corpus proceedings. *See Ex parte Crawford*, 36 Tex.Cr. 180, 182, 36 S.W. 92, 92-3 (1896) ("The entry of cumulative punishments in the final judgment and sentence certainly cannot be treated as void, and, not being void, [the applicant]

---

4. Acts 1995, 74th Leg., ch. 596, § 1, p. 3435, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 667, § 2, p. 2251-53, eff. Sept. 1, 1997.

5. *See* note 2, *ante.*

cannot avail himself of the remedy of habeas corpus."); *Ex parte Snow*, 151 Tex. Crim. 640, 209 S.W.2d 931, 933 (Tex. Crim. App. 1948) (op. on reh'g) (quoting *Crawford*); *Ex parte Hatfield*, 156 Tex.Crim. 92, 238 S.W.2d 788, 791 (Tex. Crim. App. 1951) (citing *Snow* for the proposition that "[t]he entry of cumulative punishment in a sentence is not void, and habeas corpus will not avail to correct the entry thereof"). Notwithstanding that fact, the Court has frequently considered the merits of such claims when brought by inmates on collateral attack, oftentimes granting relief. *See generally Ex parte Lewis*, 414 S.W.2d 682 (Tex. Crim. App. 1967) (collecting cases); *Ex parte Ashe*, 641 S.W.2d 243 (Tex. Crim. App. 1982). We have most recently held (post-*LaPorte*) that only a cumulation order that is so deficient that the prison system cannot properly implement it may be regarded as "void"—and thus, cognizable—for purposes of post-conviction habeas corpus review. *See Ex parte San Migel*, 973 S.W.2d 310, 311 (Tex. Crim. App. 1998) (holding that an applicant must show that a cumulation order is so lacking in specifics that the prison system "in not properly cumulating his sentences" before it will be found to be "void," and therefore challengeable, in post-conviction habeas corpus proceedings). Short of that extreme scenario, I do not regard challenges to cumulation orders to be of sufficient gravity to justify entertaining them in post-conviction collateral attack.

To the extent that *LaPorte* supports the blanket proposition that a post-conviction habeas applicant should be able to challenge the trial court's authority to enter a cumulation order for the first time in a collateral attack, the Court is right to overrule it. Trial courts in Texas have always had the authority to enter cumulation orders, and Section 3.03(a)'s minimal encroachment upon that authority is not so critical to the efficacy of the criminal jus-

tice system that we should regard it as adequate justification for extraordinary relief. The plurality is right to conclude that, under *Ex parte McJunkins*, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997) (op. on reh'g), Applicant could have challenged the cumulation order for the first time on direct appeal. Plurality Opinion at 4. Having failed to do so, Applicant has forfeited the claim in a post-conviction collateral attack. *Townsend*, 137 S.W.3d at 81.

With these additional observations, I join the plurality opinion.

Newell, J., filed a concurring opinion in which Hervey, J., joined.

We previously held in *Ex parte Townsend* that a defendant cannot raise a claim that the trial court lacked authority to cumulate or "stack" his sentences for the first time in a post-conviction application for a writ of habeas corpus. 137 S.W.3d 79, 81 (Tex. Crim. App. 2004). In this case, Applicant seeks to challenge the trial court's cumulation order for the first time in a post-conviction application for a writ of habeas corpus. In light of *Townsend*, I agree with the Court's order denying habeas corpus relief.

However, prior to our decision in *Townsend*, we held in *LaPorte v. State* that a complaint about an improper cumulation order may be raised at any time because the improper order results in a void sentence. 840 S.W.2d 412, 415 (Tex. Crim. App. 1992). We have long held that a defect which renders a sentence void may be raised at any time. *Ex parte Beck*, 922 S.W.2d 181, 182 (Tex. Crim. App. 1996) (per curiam); *see also Ex parte McIver*, 586 S.W.2d 851, 854 (Tex. Crim. App. 1979) (habeas corpus relief will issue to a person in custody under a sentence which is void because the punishment is unauthorized). It seems like we necessarily overruled this

portion of *LaPorte* when we held in *Townsend* that a challenge to an improper cumulation order cannot actually be raised at any time; it must be raised on direct appeal. But if we did not, the Court expressly overrules that portion of *LaPorte* today. I join these aspects of the Court's opinion.

I also agree that Applicant's ineffective assistance claim does not fault counsel for her failure to object at trial to the trial court's cumulation order. The trial court reviewed the pleadings and the affidavit of Applicant's trial counsel and entered a finding of fact that Applicant did not claim that his attorney was ineffective for failing to challenge the cumulation of his sentences at trial or on appeal. Having reviewed the pleadings and the affidavit of trial counsel, I believe this finding is supported by the record. *Ex parte Thompson*, 153 S.W.3d 416, 417-18 (Tex. Crim. App. 2005) (holding that Court should defer to findings if they are supported by the record). Given that Applicant is not challenging the improper cumulation order as a subset of his ineffective assistance claim, I agree with the Court's decision to deny relief on that ground as well. Otherwise, I would have granted relief on Applicant's ineffective assistance claim.

With these thoughts I concur.

Alcala, J., filed a dissenting opinion in which Richardson, J., joined.

This Court's judgment unjustly permits the incarceration of a person under circumstances in which the law absolutely disallows it. The consequence of today's plurality opinion is that Roger Dale Carter, applicant, will have to serve five addi-

tional years in prison beyond what the law permits under these circumstances. Applicant's habeas complaint is one founded in the theory that he will be unlawfully confined for five years beyond what the law permits due to the trial court's failure to abide by the terms of Section 3.03 of the Penal Code. Section 3.03 mandates that sentences such as the ones at issue here "shall run concurrently." *See* Tex. Penal Code § 3.03(a). The trial court had no discretion to cumulate applicant's sentences for these offenses that arose from the same criminal transaction and were resolved in the same proceeding. *See id.* Applicant, the State, and the habeas court appear to agree that the trial court's cumulation order violated the mandatory terms of Section 3.03 by ordering that applicant's credit card abuse sentences run consecutively to his burglary sentence.[1] Despite the fact that the interested parties agree that the cumulation order is erroneous, and despite the fact that our Texas Constitution has provided for a habeas remedy for this type of wrongful incarceration, today's plurality opinion denies applicant relief for his unlawful restraint. I disagree with this Court's plurality opinion because it denies applicant's two habeas complaints that provide independent and alternative grounds for habeas relief. Rather than reject applicant's claims, first, I would grant relief to applicant as to his ground that demonstrates that he is unlawfully restrained due to the trial court's wrongful cumulation order. Alternatively, second, I would remand applicant's ground that complains of ineffective assistance of trial and appellate counsel under the rationale that applicant's attorneys failed to

---

1. In its answer to applicant's application, the State conceded that, "[g]iven the proximity in time and the connection between the two offenses, the applicant's charges for burglary of a habitation and credit card abuse likely arose out of the same criminal episode."

Thus, the State further conceded that, if this Court were to deem the claim cognizable in a post-conviction writ, applicant "is likely entitled to relief in the form of a deletion of his cumulation order."

challenge the wrongful cumulation order. For these reasons, I respectfully dissent.

## I. Habeas Relief is Appropriate For Restraint From Wrongful Cumulation Order

It appears that the rationale for denying applicant's habeas claim with respect to the wrongful cumulation of his sentences is founded on two theories: (A) a theory that his claim is not cognizable in a habeas proceeding because it is a statutory-based complaint rather than one asserting a constitutional or jurisdictional violation, and (B) a theory that his claim is procedurally barred because he could have raised this complaint on direct appeal but failed to do so. I disagree with this Court's rationale as to both theories. As to the first theory, I conclude that the cumulation order here, which has the effect of extending applicant's incarceration for five additional years beyond what the law permits under these circumstances, violates applicant's federal constitutional right to due process and, therefore, his complaint constitutes a cognizable basis for habeas relief. With respect to the second theory, I would hold that applicant's request for habeas relief is not procedurally barred because complaints about improper cumulation orders may not be forfeited by mere inaction, regardless of whether the inaction occurs at trial or on appeal.

### A. Applicant's Complaint is Cognizable on Habeas as a Due Process Claim

Applicant's challenge of the erroneous cumulation of his sentences is a cognizable basis for habeas relief by which he seeks a remedy for his unlawful restraint from a violation of his federal constitutional rights to due process. After reviewing the general principles governing habeas relief, I provide legal authority to show that applicant's complaint is a cognizable basis for habeas relief.

### 1. General Principles for Habeas-Corpus Claims

The broad purpose of the writ of habeas corpus is to provide a vehicle by which a confined person may challenge and receive relief from his unlawful detention or imprisonment. *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002) ("The purpose of a writ of habeas corpus is to obtain a speedy and effective adjudication of a person's right to liberation from illegal restraint."); *Ex parte Ramzy*, 424 S.W.2d 220, 223 (Tex. 1968) ("the purpose of the writ of habeas corpus is to obtain a speedy adjudication of a person's right to liberation from illegal restraint").[2]

The Bill of Rights in the Texas Constitution affords applicant an absolute right to request habeas relief under these circumstances. Article I of the Texas Constitution provides, "The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual." TEX. CONST. ART. I, § 12. In addition, the Code of Criminal Procedure states that "[e]very provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it." TEX. CODE CRIM. PROC. art. 11.04.

---

**2.** *See also* TEX. CODE CRIM. PROC. art. 11.01 ("The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.").

The writ of habeas corpus has been construed as permitting relief only for violations of fundamental or constitutional rights or jurisdictional defects. *Ex parte McCain*, 67 S.W.3d 204, 210 (Tex. Crim. App. 2002); *see also Ex parte Sadberry*, 864 S.W.2d 541, 542 (Tex. Crim. App. 1993). As I show next, applicant's complaint about the erroneous cumulation order implicates a violation of his federal constitutional right to due process.

## 2. Unlawful Restraint from Erroneous Cumulation Order is Cognizable

Applicant's challenge to the improper cumulation order is cognizable in his post-conviction habeas application seeking relief in this Court. *See* TEX. CODE CRIM. PROC. art. 11.07. Although the plurality suggests that applicant's complaint asserts a mere statutory violation that does not give rise to a claim of a violation of applicant's fundamental or constitutional rights, I disagree. I would instead hold that an order imposing consecutive sentences when the law clearly disallows it gives rise to a due process violation, and thus a complaint based on such an erroneous cumulation order states a cognizable basis for relief.

In support of this position, I observe that at least one federal appellate court has held that a defendant who was erroneously sentenced to consecutive sentences in violation of state statutory law established a due process violation. *See Toney v. Gammon*, 79 F.3d 693, 699-700 (8th Cir. 1996). In *Toney*, the judge at sentencing imposed two life sentences while operating under the impression that consecutive sentences were statutorily required. *Id.* at 699. The Missouri appellate court upheld Toney's sentences. Later, in another case, the Missouri Supreme Court interpreted the relevant sentencing statute as permitting the trial court discretion in deciding whether to impose sentences concurrently

or consecutively under the circumstances of Toney's case. *Id.* In rejecting the State's argument that Toney's claim was not cognizable on habeas because it was a mere statutory violation, the court acknowledged that, while it is " 'not the province of a federal habeas court to reexamine state-court determinations on state-law questions,' " "when a state creates a 'substantial and legitimate [sentencing] expectation[,]' an 'arbitrary deprivation' of such entitlement may create an independent federal constitutional violation." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980)). In concluding that Toney's claim was cognizable as a due process claim and that he was entitled to relief in the form of resentencing, the court stated,

> Here, the Missouri sentencing statutes are clear. The state legislature, as interpreted by the Missouri Supreme Court, conclusively established that under [the relevant Missouri statute], a defendant will be sentenced to either consecutive or concurrent sentences at the discretion of the sentencing court. Toney has a constitutionally protected liberty interest in the sentence resulting from the exercise of this discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State. In this case, the sentencing judge, erroneously believing he had no discretion to do otherwise, imposed two consecutive life sentences. Such an arbitrary disregard of Toney's right to liberty is a denial of due process of law.

*Id.* at 699-700. The court accordingly remanded the case to the state court for a discretionary determination of whether Toney's sentences should run concurrently or consecutively.

Although applicant's underlying challenge is premised on a statutory violation of Section 3.03, I conclude that this violation results in a deprivation of his right to due process under the Fourteenth Amendment to the federal Constitution. *See id.*[3] Given the mandatory nature of the statutory scheme in Texas that compels concurrent sentences under the circumstances presented in this case, applicant had a substantial and legitimate sentencing expectation and a constitutionally protected liberty interest in his sentences running concurrently. That constitutionally protected liberty interest was violated by the trial court's arbitrary disregard of the mandatory sentencing scheme that must be imposed absent a defendant's intentional or knowing waiver of that scheme.

Here, the facts show that applicant committed burglary and stole several credit cards that he later used to make purchases. Without a plea bargain, but in a single proceeding before the trial court judge, applicant pleaded guilty to burglary of a habitation and two charges of credit card abuse. The trial court sentenced him to fifty years in prison for burglary and five years in prison for each of the credit card offenses. The trial court ordered that the prison terms that were assessed for each of the credit card offenses run concurrently, but it ordered that those sentences be served consecutively to the burglary sentence. It is un-

disputed that, under the terms of Section 3.03(a), the trial court had no discretion to order that the credit card abuse sentences run consecutively to the burglary sentence, and thus its cumulation order is plainly not authorized under the statutory scheme for punishing offenders under these circumstances.

Applicant's claim falls squarely within the type of complaint that may be remedied in a habeas proceeding in that he is arguing that he is illegally restrained due to the operation of the cumulation order that was entered in clear contravention of the mandatory requirements of Section 3.03, thereby extending the length of his confinement beyond what the law would otherwise permit.[4] The trial court's arbitrary refusal to comply with the applicable law that set forth a sentencing expectation for all people in Texas violated applicant's federal constitutional right to due process. *See id.* I would hold that this type of claim states a cognizable basis for habeas relief stemming from an improper-cumulation order under these circumstances.

### B. Habeas Relief Should Not Be Procedurally Barred

In addition to concluding that applicant's claim is not cognizable because it alleges a mere statutory violation rather than a violation of applicant's fundamental

---

3. *See also Moore v. Irvin*, 908 F.Supp. 200, 208 (N.D. N.Y. 1995) ("If the sentence is within statutory limits, a petitioner must show that the state court's sentencing decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby unjustly deprived the petitioner of his liberty.") (citing *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987); *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980)).

4. Applicant has asserted that he is unlawfully confined due to the improper cumulation order. Although he has not expressly framed his challenge as a constitutional violation, this Court is obligated to construe *pro se* habeas pleadings liberally so that the right to relief is not unjustly forfeited. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction.").

or constitutional rights, this Court further concludes that, in any event, applicant's complaint is procedurally barred. This Court's plurality's rationale for applying a procedural bar to this case is that, because applicant could have complained about the cumulation order on direct appeal but he did not, he may not now present this complaint for habeas relief. Although I acknowledge the general principle in our habeas law that prohibits consideration of a claim on post-conviction review if the applicant had the opportunity to raise the issue on appeal, I disagree with the application of that general principle to this type of complaint. I explain my reasoning by reviewing the general principle governing the application of a procedural bar to a habeas complaint. I then discuss the basis for my conclusion that this general principle was misapplied by this Court in *Ex parte Townsend* to an improper cumulation order when instead this Court should have applied the exception to the general rule in that case, as it should here. After that, I demonstrate that, rather than provide inconsistent claim-by-claim exceptions to the general rule that a habeas complaint is lost if it could have been raised on direct appeal but was not raised at that juncture, as this Court's precedent does now, we should instead provide a more equitable and consistent approach to determining procedural default on habeas by looking to the escalating category-of-rights framework used to evaluate the requirements for preservation of error at trial. That framework will provide general guidance and a more consistent approach to deciding which rights may be lost on habe-

as due to inaction on direct appeal and which rights may never be lost. Ultimately, here I conclude that applicant did not waive his right to concurrent sentencing and thus his habeas complaint should not be procedurally barred in the instant proceeding.

### 1. General Principles Underlying Procedural Bar in Habeas Context

This Court denies habeas relief to applicant, not because he is wrong about the merits of his challenge, but instead because this Court decides that he should have raised his complaint before now by presenting it on direct appeal. The underlying rationale for applying a procedural bar to claims that are raised on habeas when the defendant has failed to assert his rights on appeal is to disallow habeas proceedings to operate as a substitute for appellate proceedings. *See Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) ("We have said countless times that habeas corpus cannot be used as a substitute for appeal, and that it may not be used to bring claims that could have been brought on appeal."). In short, this Court holds that, because direct-appeal counsel could have challenged the improper cumulation order on direct appeal but he did not, that inaction on appeal forfeits applicant's right to challenge the cumulation order through a habeas application.

Although this Court has historically noted the general concept that a habeas writ is an extraordinary remedy that cannot be used as a substitute for appeal,[5] we have

---

5. *See Ex parte Groves,* 571 S.W.2d 888, 890 (Tex. Crim. App. 1978) ("Habeas corpus is an extraordinary remedy; and, ordinarily, neither a trial court nor this Court, either in the exercise of our original or appellate jurisdiction, should entertain an application for writ of habeas corpus where there is an adequate

remedy at law.... Moreover, we have consistently held that habeas corpus will not lie as a substitute for an appeal. However, these rules are not absolute."); *see also Ex parte Wilcox,* 128 Tex.Crim. 146, 79 S.W.2d 321, 321 (Tex. Crim. App. 1935) ("Habeas corpus is an extraordinary writ, and the general rule is that

never applied that rule literally and across-the-board in all contexts. Under this Court's existing precedent, the general rule—if a complaint was available to be raised on direct appeal, then an applicant must complain about that matter at that juncture, and he loses the right to complain about it on habeas if he has not done that—is far from absolute. If the rule was absolute, then habeas relief would be limited to rare cases in which it was impossible for an appellate attorney to have obtained relief. Even jurisdictional challenges and all constitutional challenges would be forever lost whenever an appellate attorney could have obtained relief. Yet, this Court permits habeas relief in some such cases under our existing precedent. *See, e.g., Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014) (discussing availability of jurisdictional claims on habeas); *Ex parte Rich*, 194 S.W.3d 508, 511 (Tex. Crim. App. 2006) (discussing availability of illegal-sentence claim on habeas which can be "raised at any time"); *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013) (discussing availability of some double-jeopardy claims on habeas and stating that, "[b]ecause of the fundamental nature of the double-jeopardy protections, a double-jeopardy claim may be raised for the first time on appeal or on collateral attack" under certain conditions) (citing *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)). Thus, although this Court suggests that even constitutional claims may be lost under the general rule that requires an applicant to have asserted his complaint on direct appeal if he had the opportunity to do so, in practice we do not apply that rule to all constitutional claims, and we are inconsistent about which constitutional claims may be lost under that rationale.

In the instant situation that pertains to a clearly unauthorized cumulation order, I would hold that, as with some other types of constitutional claims, this type of claim properly falls under the exception to the general rule and, therefore, habeas relief for this type of claim is not procedurally barred even when it could have been but was not raised on direct appeal. As I have explained above, the trial court had no discretion to order consecutive sentences here, and the trial judge's arbitrary disregard of applicant's right to concurrent sentences rises to the level of a due process violation. *See Toney*, 79 F.3d at 699-700. Because this case involves a constitutional violation that actually extends the amount of time that applicant will spend in prison, this is the type of weighty circumstance that would justify an exception to the normal rule that record-based claims may not be litigated on habeas. In my view, to apply a procedural bar under such circumstances places form over function to such a degree that it completely undermines the nature and purpose of post-conviction habeas relief to provide a remedy for unlawful confinement. *See Kerr*, 64 S.W.3d at 419. Moreover, I cannot see that the State has any legitimate interest in applicant remaining incarcerated for an additional five years beyond what Texas law clearly permits. *See Denton*, 399 S.W.3d at 545 (in the course of explaining why some double-jeopardy claims are cognizable on habeas, observing that the State has "no legitimate interest in maintaining a conviction when it is clear on the face of the record that the conviction was obtained in contravention of constitutional double-jeopardy protections"). Under a proper view of this

---

it does not lie where relief may be had, or could have been procured by resort to another remedy.").

Court's precedent, therefore, this Court should apply the exception to the general rule and permit habeas relief for a clearly improper cumulation order, even when appellate counsel failed to present that issue on direct appeal. This Court denies relief by applying the precedent of a case that in my view was wrongly decided, so I address that decision next.

## 2. *Ex parte Townsend* Should Be Abrogated

In applying a procedural bar to this case, this Court relies on the general principles discussed above, which were applied to a defendant in the context of a wrongful cumulation order in *Ex parte Townsend*, in which this Court denied relief to Townsend. 137 S.W.3d 79, 81-82 (Tex. Crim. App. 2004). I conclude that *Townsend*'s application of that general theory in the context of a wrongful cumulation order was erroneous and that this Court's plurality opinion errs by continuing to rely on *Townsend* as its support for denying habeas relief through the application of a procedural bar based on his failure to assert this complaint on direct appeal. Although I agree with this Court's plurality opinion to the extent that it holds that an appellate complaint about a wrongful cumulation order is a waivable-only right that may not be forfeited or lost on appeal by inaction at trial, I disagree with this Court's opinion to the extent that it holds that a habeas complaint about a wrongful cumulation order may be forfeited or lost on habeas by inaction on appeal. I would hold that, in accordance with the category-of-error framework that this Court has set forth to resolve preservation requirements for trial errors on appeal, this type of complaint may not be forfeited or lost on habeas in an initial application by inaction on direct appeal and that it may be raised in the first instance on habeas. To explain my analysis, I review (a) *Townsend*'s applica-

tion of a procedural bar based on inaction on direct appeal to a habeas complaint about a wrongful cumulation order, (b) the category-of-error framework that this Court has created to resolve preservation requirements for trial errors on appeal, and (c) the reasons why this Court's jurisprudence would benefit from harmonizing *Townsend* with the category-of-error framework so that rights that are determined to be either waivable-only or non-waivable under that framework are not forfeited on habeas by mere inaction on appeal.

### a. This Court's Precedent in *Ex parte Townsend*

In *Townsend*, this Court held that, "when a defendant has an adequate remedy at law, the merits of his claim may not be reviewed on application for a writ of habeas corpus." *Townsend*, 137 S.W.3d at 81-82. Townsend had pleaded guilty to a drug offense and was sentenced to ten years' imprisonment, but, as an alternative to prison, he was sent to the Texas Department of Criminal Justice Special Alternative Incarceration Program ("Boot Camp"). *Id.* at 80. After Townsend's successful completion of boot camp, the trial court suspended the remainder of his sentence and placed him on probation. *Id.* Around one year after being placed on probation, Townsend was convicted of murder and sentenced to sixty years' imprisonment. *Id.* The trial court also revoked his probation and imposed the previously suspended ten-year sentence. *Id.* The trial court issued a cumulation order that resulted in the ten-year drug sentence being stacked on the sixty-year murder sentence. *Id.*

On post-conviction habeas review, this Court denied Townsend's claim that the cumulation order was improper. *Id.* Although it found that entering a cumulation

order to stack a sentence that Townsend had already begun serving violated constitutional protections against double punishments for the same offense, this Court concluded that Townsend was barred from obtaining relief on habeas because he had failed to raise the issue on appeal. *Id.* at 81-82. This Court explained that there· "was nothing to prevent [Townsend] from raising this claim on direct appeal." *Id.* at 81. This Court noted that "[t]he Great Writ should not be used in matters that should have been raised· on appeal" and that "[e]ven a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal." *Id.* Thus, because Townsend had an adequate remedy at law by way of direct appeal and failed to avail himself of that remedy, the extraordinary remedy of habeas was unavailable. *Id.* at 81-82.

### b. This Court's Category-of-Error Framework is Instructive

This Court's plurality opinion describes a defendant's right to concurrent sentencing under Section 3.03 as a "waiver-only right"—that is, it is a right that must be implemented unless affirmatively waived by a defendant. *See Ex parte McJunkins*, 954 S.W.2d 39, 40-41 (Tex. Crim. App. 1997) (op. on reh'g); *Marin v. State*, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993). I agree with that assessment and that it is proper to consider the category-of-error framework in *Marin v. State* as a basis for discerning the type of right at issue in a habeas complaint. *Marin*, 851 S.W.2d at 278-80. In *Marin*, this Court described three categories of rights: (1) absolute systemic requirements and prohibitions that are nonwaivable, (2) rights of litigants that must be implemented unless expressly waived, and (3) rights that must be insisted upon at trial or, otherwise, nothing is presented for review. *Id.* at 279. The *Marin* court described rights that are waiva-

ble only as rights which "cannot be made subject to rules of procedural default because, by definition, they are not forfeitable." *Id.* This Court further described waivable-only rights by stating, "Although a litigant might give [waivable rights] up and indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record." *Id.* at 280. Furthermore, *Marin* noted that, as a consequence, "failure of the judge to implement [waivable-only rights] at trial is error which might be urged on appeal whether or not it was first urged in the trial court." *Id.*

Although it has discussed *Marin*'s category-of-rights framework to explain why applicant's appellate counsel could have and should have complained on appeal about the wrongful cumulation order despite trial counsel's failure to preserve that complaint for appeal, this Court's plurality opinion then ignores that framework for purposes of procedural default on habeas. This is where I part with this Court's decision in this case. I would apply the *Marin* category-of-rights framework to applicant's complaint about the improper cumulation order and determine that his complaint is not subject to a procedural bar in this case. Furthermore, because it conflicts with this approach as to improper cumulation orders, I would overrule *Townsend*.

*Townsend* determined that a *Marin* category-two waiver-only right was forfeited on habeas by mere inaction on direct appeal. The implication from this Court's holding in *Townsend* is that rights that are category-two, waiver-only rights on direct appeal are treated the same as mere category-three forfeitable rights on habeas—both are subject to procedural default if they are not vindicated on direct appeal. In fact, because *Townsend* simply recited the

general rule of procedural default on habeas without acknowledging that there are exceptions to that rule, *Townsend* gave the appearance that there are no exceptions to the application of a procedural bar on habeas based on the failure to present an issue on direct appeal—and this would include even category-one rights that may not be waived or forfeited, and category-two waivable-only rights, as here. I conclude that *Townsend*'s failure to exempt those rights from the rule of procedural default on habeas makes it incompatible with the suggestion in *Marin* that, because of the very nature and importance of the rights at stake, category-two rights, for example, could not be forfeited by mere inaction. *Compare Townsend*, 137 S.W.3d at 81-82, *with Marin*, 851 S.W.2d at 279-80. For this reason, I conclude that *Townsend* was wrongly decided. Furthermore, in practice, I observe that this Court has inconsistently and without explanation permitted exceptions to the general rule that bars consideration of a claim on habeas if it could have been raised on direct appeal, but we have not clearly explained our rationale for applying an exception rather than the general rule. I, therefore, propose that this Court provide some consistency to our jurisprudence for habeas cases by applying the *Marin* category-of-rights framework to provide a general outline for the application of procedural bars in habeas cases.

### c. This Court's Jurisprudence Should Be Harmonized

In general, I would seek to adopt a system that harmonizes the *Marin* framework with this Court's jurisprudence with respect to procedural default in the habeas-corpus context. Thus, in general, for cognizable habeas corpus matters that implicate category-three forfeitable rights, a defendant's failure to complain at trial or on appeal would result in a procedural bar against habeas relief. But, for matters that implicate category-two waivable-only rights, I would hold that a defendant's failure to complain at trial or on appeal does not result in a procedural bar against habeas relief, unless the record shows that a defendant has intentionally or knowingly waived those rights at trial or on appeal. Furthermore, for cognizable habeas matters that are category-one rights, there would never be a procedural bar to habeas relief in an initial application.

Although I recognize that *Marin* was a case addressing preservation of error on direct appeal whereas *Townsend* was a case addressing the cognizability of claims on habeas, I conclude that the reasoning of *Marin* applies equally in the habeas context. In *Marin* this Court explained, while addressing category-two rights, that "[s]ome rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. A principle characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone." 851 S.W.2d at 278. Given that these rights are so important as to not be subject to forfeiture on direct appeal, it appears to me that this same rationale should apply in the habeas corpus context—the right is too important to be subject to forfeiture on habeas due to inaction on direct appeal. I further note that this Court has recently acknowledged that principles for error preservation on appeal and on collateral review are substantially overlapping, and the preservation "requirement in each context informs the other." *Garza v. State*, 435 S.W.3d 258, 261 (Tex. Crim. App. 2014). In view of this trend in our habeas jurisprudence, I would adopt a system that expressly harmonizes the principles of procedural default on direct appeal and on habeas by holding that category one and two

rights are not subject to procedural forfeiture in either type of proceeding.

In sum, by generally applying the *Marin* framework in accordance with the category of rights that are implicated in a request for habeas relief, I would hold that this Court may apply a procedural bar to category-three rights and to category-two rights that are waived by litigants. This framework, as generally implemented in habeas cases, will provide more consistency in the resolution of these complaints. More importantly, this framework will ensure that category-one rights and non-waived category-two rights that are cognizable for habeas relief will not be forfeited by mere inaction by a defendant or his counsel, and thus this will ensure more just outcomes and better effectuate the Texas constitutional right of habeas corpus.

### 3. Applicant Did Not Waive His Right to Concurrent Sentencing

The record in this case establishes that this applicant did not waive his right to concurrent sentencing, and thus, as discussed above, I would hold that he cannot forfeit the right to complain about the consecutive sentencing in this habeas litigation merely by his inaction on direct appeal. The fact that another defendant could theoretically have waived his right to concurrent sentences is factually immaterial to this case. *See McJunkins*, 954 S.W.2d at 40. That some theoretical defendant might agree to waive his right to concurrent sentencing is not a reason to deprive applicant of his right to habeas relief under these circumstances in which he did

not enter into any such agreement and thus is being unlawfully confined pursuant to the improper cumulation order which, as discussed above, rises to the level of a violation of his due process rights. I, therefore, would hold that habeas relief may not be denied in this case by the application of a procedural bar.

### II. Alternatively, Ineffective Assistance of Counsel Ground Should Be Remanded

An alternative and perhaps simpler way to resolve this case is by considering applicant's pro se pleadings that complain about ineffective assistance of counsel as to trial and appellate counsel's failure to challenge the cumulation order at trial and on appeal, and by remanding that ground for evidentiary development in the habeas court.[6] Under this alternative resolution of the instant claims, I would remand applicant's case to the habeas court for evidentiary development and findings and conclusions as to those claims.

A review of three pleadings filed by applicant, when examined together, clearly reveal that his intent is to present a habeas ground for relief on the basis that trial and appellate counsel were ineffective by failing to challenge the cumulation order. First, in his initial habeas application, in addition to complaining about the cumulation order itself, applicant generally complained about trial counsel's deficient performance by asserting that counsel, for example, failed to explain the punishment range to him and that this prejudiced him by the imposition of harsher punishment.[7]

---

**6.** Applicant has represented himself pro se throughout this habeas litigation, which has included the filing of his application, his responses to the State's initial proposed findings, the habeas court's proceedings on remand as to the cumulation order, and his objections to factual findings and conclusions

of law by that court. Applicant is confined in prison, presumably with limited access to legal resources, such a prison law library.

**7.** Applicant pleaded an ineffective assistance of counsel complaint asserting multiple theories, including his assertion that he did not

After his initial habeas application was filed, applicant responded to the initial State's Proposed Findings of Fact and Conclusions of Law. Applicant elaborated in that filing that his ineffective-assistance claim should be construed as including a challenge to trial and appellate counsel's failure to raise the improper cumulation order at trial and on direct appeal.[8] Third, although this Court's remand order had not asked the habeas court to address the merits of applicant's complaint as to the ineffectiveness of counsel in failing to challenge the cumulation order, the State and the habeas court volunteered their assessment of applicant's pleadings with respect to that matter. They opined that he had not presented that complaint in the context of counsel's performance regarding the cumulation order. Applicant responded by re-urging his objection specifying that appellate counsel's performance "fell below a minimal tactic that could have given relief in these cumulated sentences, but failed to do so, and causing harm" to applicant. He further re-urged his request that "relief be given in this case of cumulated sentences. Due, to the ineffectiveness of both trial

and appellate counsels incompetence in this case."

Given that the State has essentially conceded that applicant's cumulation order is improper, and given that this pro se applicant has adequately argued that trial and appellate counsel were ineffective by failing to challenge the cumulation order, this Court should remand his habeas complaint as to counsel's ineffectiveness to permit him to provide evidence supporting his complaint. Under these circumstances, I would hold that the pro se pleadings and the record of this case give rise to a colorable claim of ineffective assistance of both trial and appellate counsel as to their failure to contest the cumulation order, and I would accordingly remand the case for further proceedings as to those claims.

### III.  Conclusion

It is undisputed that the cumulation order in this case was invalid and that, unless this Court grants habeas relief, applicant will spend an additional five years in prison beyond what the law permits based

understand that the punishment range had changed without notice, that he was not provided notice and an opportunity to be heard concerning the harsher punishment range, that counsel led him to believe that he would be sentenced to fewer than eighteen years in prison, that counsel "failed to preserve egregious errors into the record [and] further denied [applicant] meaningful effective assistance," that counsel failed to timely file a motion for new trial and thus "denied [applicant the] opportunity to develop the record that would have shown counsel's gross ineffectiveness," and that, "by [counsel's] bad acts and willful omissions is proximate causing [sic] [applicant] to be illegally restrained of his rights by the State's use of a void judgment."

8.  Regarding the performance of appellate counsel with respect to the cumulation order, applicant stated that appellate counsel "failed to secure or petition the courts to any errors

found in the records and have them properly to be ruled on by the court of criminal appeals therefore neglecting [his] constitutional rights." With respect to the suggestion that his claim should be barred because he had an adequate remedy on appeal, applicant stated, "At no point and time was [applicant] aware of other avenues for an adequate remedy. Trial counsel and appellate counsel failed short in the duties for any proper resolutions in formality. Therefore blindly leading [applicant] into harmful acts." With respect to the suggestion that his pleadings failed to allege ineffectiveness of trial or appellate counsel based on counsel's failure to challenge the stacking order at trial or on appeal, applicant stated, "Being unlearned in the law [applicant] was unaware of all allegations to bring forth otherwise would have done so and at this time request that relief be granted of this cumulated sentences if solely this be the only relief possible."

on the trial court's arbitrary disregard of the mandatory concurrent sentencing scheme that applies to the circumstances of this case. As to the merits of applicant's complaint about the wrongful cumulation order, I conclude that (1) his request constitutes a cognizable basis for habeas relief due to his illegal confinement that is the result of the unlawful cumulation order that violates his due process rights, and (2) his request for habeas relief is not procedurally barred because his challenge to the cumulation order was not waived by him and this is a right that may not be forfeited by mere inaction. Alternatively, as to applicant's complaint about ineffective assistance of trial and appellate counsel for failing to challenge the cumulation order, I would hold that, liberally construing his pro se pleadings and filings, he has asserted that challenge and this Court should remand it to the habeas court for evidentiary development. Because either alternative would be a more appropriate and just outcome in this case than this Court's denial of relief, I respectfully dissent.

Richardson, J., filed a dissenting opinion.

Today, this Court holds that Applicant's illegal sentence claim is procedurally barred. The majority reached this result despite Applicant's ineffective assistance of counsel claims, which, given due consideration, could serve as a ground to excuse the procedural default, and entitle Applicant to relief as a freestanding claim. But, we will never know because this Court does not remand this case so that the habeas court can further evaluate Applicant's unbarred ineffective assistance of counsel claims. Respectfully, I disagree with the majority opinion and join Judge Alcala's dissent.

Following Applicant's open plea of guilty to burglary of a habitation and two counts of credit card abuse, he was sentenced to 55 years confinement. The trial court judge ordered Applicant's 50-year sentence for burglary to run consecutively with his two concurrent five-year sentences for the credit card abuse. There is no disagreement that Applicant's sentences were improperly stacked—the statute *mandates* that his sentences run concurrent.[1] The trial court judge should have been aware of this. While the initial error was on the trial court judge, everyone else with a law degree missed it too—the prosecutor, Applicant's trial counsel, and his appellate counsel. Although this critical mistake was made by the trial court judge, the prosecutor, trial counsel, and appellate counsel, Applicant is the one who will be paying for that mistake by serving an extra five years behind bars. It took Applicant *representing himself* to bring this error to the trial court's attention—Applicant raised the improper stacking issue through his *pro se* application for writ of habeas corpus. Yet, today, this Court says too bad—too little, too late.

The State urges, and the majority agrees, that this claim is procedurally barred because Applicant did not object to the stacking order at trial nor did he raise the issue on appeal. And, despite the fact that Applicant did raise over 20 ineffective assistance of counsel claims in his writ application, the habeas court found that "[A]pplicant has not claimed that either his trial or appellate counsel was ineffective for failing to challenge the cumulation of his sentences at trial or on direct appeal." Thus, the habeas court recommends, and the majority agrees, that relief should be denied.

1. Tex. Penal Code § 3.03(a) ("the sentences shall run concurrently").

"Appellate courts have a duty to liberally construe *pro se* pleadings."[2] However, it appears that the habeas court did not give a liberal construction to Applicant's claims. I agree with Judge Alcala that this writ application should be remanded, Applicant should be appointed counsel to amend his writ application, and the habeas court should address the issue of whether Applicant's trial counsel and appellate counsel were ineffective for failing to catch the trial court's invalid cumulation order.

I am perplexed that we are in support of the State's argument that a procedural bar applies when potentially meritorious ineffective assistance of counsel claims remain unresolved. This exact position was not so well-received by the Supreme Court over a decade ago.[3] In *Dretke v. Haley*,[4] the State of Texas admitted that the sentence was illegal, but it maintained that it should be upheld because of a procedural bar—all while ignoring a potential ineffective assistance of counsel claim.[5] The Justices responded to the State's argument with puzzlement:

> JUSTICE KENNEDY: Can ... can you tell me ... I don't want to derail the argument ... you've conceded that this sentence is unlawful?
>
> SOLICITOR GENERAL: Yes, Justice Kennedy
>
> JUSTICE KENNEDY: Well, then why are you here? Don't ... is there

some rule that you can't confess error in your state or?

> SOLICITOR GENERAL: No, Justice Kennedy, but the State is here, because the State is concerned about the impact on the procedural default rule, in particular the Fifth Circuit's decision.
>
> JUSTICE KENNEDY: Well, so a man does 15 years so you can vindicate your legal point in some other case? I ... I just don't understand why you don't dismiss this case and move to lower the sentence.
>
> &ast; &ast; &ast;
>
> JUSTICE O'CONNOR: Well, let me ask you this. Why ... why isn't there still an inadequate assistance of counsel claim out there, and why shouldn't the court address that before it gets into the question that it dealt with?
>
> SOLICITOR GENERAL: Justice O'Connor, I think there is a very strong argument that there was inadequate assistance of counsel.
>
> JUSTICE O'CONNOR: Well, why don't we vacate and remand and let them deal with that?[6]

Wisely and justly, the Supreme Court in *Dretke* remanded the federal writ so that the lower court could further evaluate the applicant's ineffective assistance of counsel claim.[7]

---

**2.** *Ex parte Scott*, 496 S.W.3d 793, 795 (2016) (Alcala, J., concurring) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)).

**3.** *See generally Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004).

**4.** 541 U.S. 386, 124 S.Ct. 1847 (2004).

**5.** The first time the State acknowledged (or conceded) that the applicant in *Dretke* had a "viable and 'significant' ineffective assistance of counsel claim" was at oral argument before the Supreme Court. *Id.* at 394, 124 S.Ct.

1847. In this case, without oral argument, the State avoided this misstep.

**6.** Oral argument at 4, *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (No. 02-1824), https://www.supremecourt.gov/oral_arguments/argument_transcripts/02-1824.pdf [hereinafter *Dretke* Oral Argument].

**7.** *Dretke*, 541 U.S. at 394, 396, 124 S.Ct. 1847 (vacating and remanding after concluding that the lower court did not "address all non-defaulted claims for comparable relief and

The *Dretke* case clearly highlights that, when applicants have potentially meritorious ineffective assistance of counsel claims, there would be "cause to excuse the procedural default."[8] In fact, Justice Stevens commented during the *Dretke* oral argument that he had always thought there was "a manifest injustice exception to the procedural default rule."[9] In this case, enforcing a prison sentence that is five years longer than legally allowed is a manifest injustice. As the Supreme Court did in *Dretke*, and for the reasons outlined in Judge Alcala's dissenting opinion, which I join, I believe this application should be remanded to the trial court. Therefore, respectfully, I dissent.

other grounds for cause to excuse the procedural default").

**8.** *Id.* at 394.

**9.** *Dretke* Oral Argument, *supra* note 6, at 5.