

# In the Court of Criminal Appeals of Texas

## No. WR-91,029-02

### EX PARTE NOLAN RYAN OVERSTREET,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. C-396-W012330-0714331-B
In the 396th District Court
Tarrant County

YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.

In 2000, Applicant pled guilty to the offense of failing to register as a sex offender, which was a state-jail felony at the time of the commission of the alleged offense in 1998. Acts 1997, 75th Leg., ch. 668, §§ 1, 10, pp. 2260, 2264, eff. Sept. 1, 1997. The convicting court judge

reduced Applicant's punishment to that for a Class A misdemeanor, under Section 12.44(a) of the Texas Penal Code, and sentenced him to 90 days in the county jail. TEX. PENAL CODE § 12.44(a).[1]

In 2023, Applicant filed this subsequent post-conviction application for writ of habeas corpus under Article 11.07, Section 4. TEX. CODE CRIM. PROC. art. 11.07 § 4. The convicting court has now recommended that this Court conclude that Applicant has satisfied the gateway for proceeding in a subsequent writ application, as provided for in Section 4(a)(1) of Article 11.07.[2] Specifically, the convicting court

---

[1] Although Applicant was punished as if he had committed a Class A misdemeanor, he was *convicted* of a state-jail felony. Therefore, Article 11.07 is the appropriate vehicle by which to seek post-conviction relief. *See* TEX. CODE CRIM. PROC. art. 11.07 § 1 ("This article establishes the procedures for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death."); *Ex parte Palmberg*, 491 S.W.3d 804, 805 n.1 (Tex. Crim. App. 2016) ("[A] state jail felony conviction that is punished as if it were a Class A misdemeanor is still subject to collateral attack in an Article 11.07 post-conviction application for writ of habeas corpus."). Moreover, although Applicant long ago completed his 90-day sentence, he has established collateral consequences "sufficient to establish 'confinement' so as to trigger application of art. 11.07." *Ex parte Herrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

[2] Section 4(a)(1) reads:

Sec. 4  (a) If a subsequent application for writ of habeas corpus us filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article

recommends that we conclude that Applicant has established a new *legal* basis for his claim—*i.e.*, one that was unavailable to him when he filed his initial writ application.

The Court now grants habeas relief. But the Court's opinion fails to articulate the basis, in light of the requirements contained in Code of Criminal Procedure article 11.07, Section 4, for permitting Applicant to proceed to a merits determination on his claim of actual innocence.[3] It simply asserts that Applicant "states the he has previously unavailable evidence of his actual innocence[,]" without identifying whether this justifies granting him relief in a subsequent writ application based upon Section 4(a)(1)'s reference to previously unavailable *facts* or previously unavailable *law*. *See* TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(1) (allowing judicial review of claims in a subsequent writ application if "the factual or legal basis for the claim was unavailable on the date" the previous application was filed).

---

because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application[.]

TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(1).

[3] Nothing about the fact that Applicant is claiming so-called "actual innocence," per se, exempts him from having to satisfy the provisions of Section 4 of Article 11.07, governing the reviewability of claims in a subsequent post-conviction writ application. *See Ex parte Sledge*, 391 S.W.3d 104, 109 (Tex. Crim. App. 2013) ("[T]here is nothing irrational about the legislative exercise of its prerogative to draw a definite statutory line beyond which the State's substantial interest in the finality of its judgments overcomes all other policy interests, including the interest of habeas corpus applicants indefinitely to preserve a forum in which to challenge—even on jurisdictional grounds—the validity of their convictions."). The Legislature may likewise legitimately prohibit a subsequent habeas corpus applicant from litigating a claim of actual innocence if he could have raised that claim in a previous application.

In my view, Applicant has established neither a new *factual* basis nor a new *legal* basis for his actual innocence claim. The Court therefore errs in reaching the merits of his claim, much less in granting him relief. I respectfully dissent.

## I. BACKGROUND

The basis for Applicant's failure-to-register conviction was an offense he was convicted of committing in 1997, in the state of Colorado, before moving to Texas. Applicant filed his initial writ application in 2020. In that application, Applicant alleged actual innocence grounded upon his claim that the Colorado offense does not amount to a "reportable offense" for purposes of a prosecution for failing to register as a sex offender. He made this claim notwithstanding that, at least as of 2006, the Texas Department of Public Safety ("DPS") had declared the Colorado statute under which he was convicted to be "substantially similar" to a Texas offense for purposes of Applicant's duty to register. *See* Acts 2001, 77th Leg., ch. 211, §§ 2, 19, pp. 400, 405, eff. Sept. 1, 2001 (enacting then-Article 62.0101, Texas Code of Criminal Procedure, making DPS responsible for determining the substantial similarity of out-of-state offenses for sex-offender registration purposes, and making it retroactive); Acts 2005, 79th. Leg., ch. 1008, §§ 1.01, 4.01(a), pp. 3388, 3422, eff. Sept. 1, 2005 (amending former Article 62.0101 and recodifying it as Article 62.003; also making the amendment retroactive). On June 17, 2020, this Court denied Applicant relief on the merits of that initial actual innocence habeas claim.[4]

---

[4] Applicant also claimed in his initial writ application that his guilty plea had been involuntary. We denied relief on both claims. Thus, we "finally disposed" of Applicant's entire initial writ application, triggering Article 11.07,

The very next day, on June 18, 2020, Applicant appealed DPS's determination with respect to substantial similarity to a Travis County district court, in accordance with Article 62.003(c) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 62.003(c) ("An appeal of a determination made under this article [regarding substantial similarity, by DPS] shall be brought in a district court in Travis County."). On October 30, 2020, the district court in Travis County granted Applicant's motion for summary judgment, reversing DPS's determination regarding substantial similarity. DPS then appealed that determination to the Third Court of Appeals, which docketed the appeal as a civil matter, assigning it a civil cause number.[5]

Section 4's limitations on subsequent writ applications. *See Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997) ("[A] 'final disposition' of an initial writ [for purposes of triggering Section 4's limitations on subsequent writs] must entail a disposition of all the claims raised.").

[5] Article 62.003 says nothing about the losing party from an appeal to the Travis County district court pursuing a *further* appeal in the court of appeals. Neither the parties, in their briefs to the court of appeals, nor the court of appeals in its opinion, identified a statute that confers appellate jurisdiction on the Third Court of Appeals. *Tex. Dept. of Pub. Safety v. Anonymous Adult Montana Resident*, No. 03-20-00565-CV, 2022 WL 1652137 (Tex. App.—Austin May 25, 2022) (mem. op., not designated for publication). This Court has said that, under Article V, Section 6, of the Texas Constitution, "a statute must expressly give the courts of appeals jurisdiction." *Whitfield v. State*, 430 S.W.3d 405, 407−08 (Tex. Crim. App. 2014); TEX. CONST. art. V, § 6 ("Said Court of Appeals shall have appellate jurisdiction . . . which shall extend to all cases of which the District Court or County Courts have original *or appellate* jurisdiction, *under such restrictions and regulations as may be prescribed by law*.") (emphasis added). It is unclear to me by what legislative authority the court of appeals entertained DPS's appeal. I have no occasion in evaluating the present post-conviction writ application, however, to address the court of appeals' jurisdiction in that (albeit related) civil matter. In any event, my conclusion would remain the same even if any available statutory authority to appeal from the DPS determination must end in the district court.

On May 25, 2022, the court of appeals affirmed the district court's grant of summary judgment on Applicant's behalf. *Tex. Dept. of Pub. Safety v. Anonymous Adult Montana Resident*, No. 03-20-00565-CV, 2022 WL 1652137 (Tex. App.—Austin May 25, 2022) (mem. op., not designated for publication). More than a year later, on August 14, 2023, Applicant filed the present, subsequent writ application. Applicant now argues that, in view of the appellate reversal of DPS's determination that his Colorado conviction is for an offense that is "substantially similar" to a Texas offense, he had no duty to register as a sex offender and, therefore, cannot be found to have committed the offense of failing to do so.

In his sole ground for relief, Applicant claims: "Newly available evidence shows that [he] is actually innocent." Under "Facts Supporting" this ground, his writ application merely cites the decisions of the district court and court of appeals reversing DPS's determination of substantial similarity. He does not designate whether he deems himself entitled to proceed in this subsequent writ application because of new *facts* or new *law*. But in his memorandum in support of the writ application, Applicant argues only that "**[t]his application falls under the 'previously unavailable legal basis' exception to the bar against subsequent applications.**" Memorandum in Support of Application for a Writ of Habeas Corpus at 4−6.

In its recommended findings of fact and conclusions of law, the convicting court agrees, concluding that "[t]he reversal of DPS's substantial similarity determination by the [district court], which was affirmed by the Third Court of Appeals, is a legal basis for Applicant's

actual-innocence claim that was unavailable when he filed his initial habeas application." Findings and Order ## 34−41. The convicting court also specifically recommends that we reject the State's counter-argument that the appellate determination that DPS was wrong is really a *factual* basis for relief that Applicant could have pursued prior to filing his initial writ application. *Id.* ## 33−34.

In the State's view, however, Applicant failed to exercise due diligence by filing his initial writ application before first prosecuting his appeal of DPS's determination of substantial similarity. *See* TEX. CODE CRIM. PROC. art. 11.07 § 4(c) ("[A] factual basis of a claim is unavailable on or before [the date that an initial writ is filed] if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date."). For reasons I will next endeavor to articulate, I agree with the State.

## II. ARTICLE 62.003, CODE OF CRIMINAL PROCEDURE

Present Article 62.003 of the Code of Criminal Procedure places the primary responsibility on DPS for determining "whether an offense under the laws of another state . . . contains elements that are substantially similar to the elements of an offense under the laws of this state." TEX. CODE CRIM. PROC. art. 62.003(a). It also expressly provides that "[a]n appeal of a determination made under this article shall be brought in a district court in Travis County." *Id.* art. 62.003(c). This has been the state of the law since 2001. Acts 2001, 77th Leg., ch. 211, §§ 2, 19, pp. 400, 405, eff. Sept. 1, 2001. Still, I am not entirely convinced that the appeal to the Travis County district court was timely in this case, or that the Third Court of Appeals had jurisdiction to review the district

court's determination. *See* note 5, *ante.* I am also not sure that, even if the court of appeals did have jurisdiction, it properly docketed the case as a civil matter. *See* TEX. CONST. art. V, § 3 (providing that the Texas Supreme Court's "appellate jurisdiction . . . shall extend to all cases except in criminal law matters"); TEX. CONST. art. V, § 5 (providing that this Court's appellate jurisdiction extends to "all criminal cases of whatever grade"). It seems odd to me to regard a determination about the meaning of penal statutes as a civil law matter as opposed to a criminal law matter.

In any event, the statute is crystal clear that the district court in Travis County, at least, had subject matter jurisdiction to review DPS's determination. Also, DPS does not seem to have pursued discretionary review of the Third Court of Appeals' affirmance of DPS's determination, so it makes no difference in this case whether the matter is properly regarded as civil or criminal—assuming it may be appealed beyond the district court at all. I therefore have no reason at this point to question the validity of the district court's determination, and I will regard it as law of the case for purposes of this subsequent writ application.

### III. NEW FACTUAL BASIS?

The way Applicant drafted his ground for relief suggests he intended to pursue subsequent habeas corpus review under the "new facts" provision in Article 11.07, Section 4(a)(1): "Newly available *evidence* shows that [Applicant] is actually innocent." (Emphasis added.) In that event, I must agree with the State that Applicant has not demonstrated sufficient diligence in pursuing his claim. If the new "evidence" of Applicant's innocence is the appellate determination that

the Colorado offense of which he was convicted is not "substantially similar" to any Texas penal offense, then he could have sought that appellate determination before he filed his initial writ application. If that is his new fact, as he seems to allege,[6] it cannot be said that it was "not ascertainable through the exercise of reasonable diligence on or before that date." TEX. CODE CRIM. PROC. art. 11.07 § 4(c). Thus, we are not at liberty to reach the merits of his claim on that account.

## IV. NEW LEGAL BASIS?

In his supporting memorandum of law, however, Applicant exclusively invokes the "new law" exception under Section 4(a)(1), rather than "new facts" as suggested by the writ application itself. But in my view, he has not demonstrated that he should be allowed to proceed under this exception either. Before "new law" may justify a court in reviewing the merits of a subsequent-writ claim, it must go to "the . . . legal basis" for that claim. TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(1). The legal basis for Applicant's claim, however, is so-called "actual innocence."[7]

---

[6] Under "**FACTS SUPPORTING"** Applicant's single ground for relief, his writ application asserts, in totality: "[Applicant] pleaded guilty to failing to register as a sex offender based on a Colorado conviction. The 201st District Court and the Third Court of Appeals have since concluded that [Applicant's] Colorado offense is not reportable."

[7] I am speaking here of what the Court typically refers to as an "actual innocence" claim. For my part, I would simply characterize it as a claim for relief under the *Elizondo* standard, after this Court's opinion in *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). As I have explained repeatedly, satisfying this admittedly high burden is still "not the same as establishing that the applicant is manifestly *innocent.*" *Ex parte Cacy*, 543 S.W.3d 802, 803 (Tex. Crim. App. 2016) (Yeary, J., concurring). *See Ex parte Chaney*, 563 S.W.3d 239, 286 (Tex. Crim. App. 2018) (Yeary, J., concurring) ("I

"Actual innocence" has been an available legal basis for a post-conviction writ application since 1996, when this Court decided *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996). And that legal basis for relief has been available even for applicants who pled guilty, as Applicant did, since *Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002) (op. on original sub.). In fact, Applicant *did* argue actual innocence in his initial writ application. He simply failed to adequately develop the fact that the Colorado offense for which he was convicted was not "substantially similar" to a Texas offense prior to filing his initial writ application.

In concluding that Applicant is invoking a previously unavailable legal basis for relief, the convicting court relies upon two opinions from this Court. Findings and Order # 25. Those opinions observe that "a legal basis was previously unavailable if subsequent case law makes it easier to establish the claim and renders inapplicable factors that had previously been weighed in evaluating the merits." *Ex parte Barbee*, 616 S.W.3d 836, 839 (Tex. Crim. App. 2021) (citing *Ex parte Chavez*, 371 S.W.3d 200, 207 (Tex. Crim. App. 2012)). I do not think this principle

---

do not regard the *Elizondo* standard as sufficiently rigorous to justify the nomenclature 'actual innocence.'"); *Ex parte Mallet*, 602 S.W.3d 922, 925−26 (Tex. Crim. App. 2020) (Yeary, J., concurring) (agreeing that the applicant satisfied *Elizondo*, but advocating that the Court "avoid the label 'actual innocence'"); *Ex parte Santillan*, 666 S.W.3d 580, 580−81 (Tex. Crim. App. 2023) (Yeary, J., concurring) (agreeing that the applicant had probably established true "actual innocence," and was therefore entitled to relief, but refusing to join the Court's opinion because it declared him "actually innocent" simply because he satisfied the *Elizondo* standard"); *Ex parte Lane*, 670 S.W.3d 662, 680 n.1 & 684−85 (Tex. Crim. App. 2023) (Yeary, J., dissenting) (arguing that in an *initial* writ application, the applicant established that he was "absolutely innocent"—as opposed to "actually innocent"—of failure to register, having proven in the writ proceeding that he had no reportable conviction).

applies in this case.

In *Chavez*, for example, the applicant relied upon the extension of the availability of false evidence claims to the State's *unknowing* use of false evidence, recognized earlier in *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2009). *Chavez*, 371 S.W.3d at 204−05. And in *Barbee*, the new law that the applicant asserted (unsuccessfully) was the recent opinion of the United States Supreme Court in *McCoy v. Louisiana*, 584 U.S. 414 (2018). Applicant identifies no comparable case from this Court, the Supreme Court, or even "a court of appellate jurisdiction of this state[,]" TEX. CODE CRIM. PROC. art. 11.07 § 4(b), that identifies a new or modified *standard* that makes *the legal basis* for his claim—"actual innocence"—newly available or easier to prove.

Applicant cites no subsequent case that has, for example, moderated *Elizondo*'s "Herculean" standard for establishing a claim of actual innocence. *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006). And the extension of the application of that standard to cover guilty pleas occurred, as I have noted, in 2002, in *Tuley*. The fact that some new development in the litigation history of Applicant's actual innocence claim may have resulted in law of the case that could ultimately, if timely raised, have helped him does not mean that *the legal standard itself* has morphed in a way that should excuse his failure to pursue that new development earlier.[8]

---

[8] An analogy based upon post-conviction DNA testing comes readily to mind. Under Chapter 64 of the Texas Code of Criminal Procedure, a convicted person may obtain a judicial determination that, if the results of post-conviction DNA testing were favorable, and "had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." TEX. CODE CRIM. PROC. art. 64.04. But Chapter 64—

I agree with the State, therefore, that Applicant's asserted justification for re-raising his actual innocence claim is more in the nature of a new *factual* basis than a new legal basis. It is certainly not what *Barbee*/*Chavez* contemplated would be regarded as a previously unavailable *legal* basis for relief. For that reason, I reject the convicting court's recommendation that we find Applicant has articulated a new legal basis for his claim.

## V.  ACTUAL INNOCENCE GATEWAY?

Under Article 11.07, Section 4(a)(2), a subsequent post-conviction application for writ of habeas corpus may proceed to a merits determination if the applicant establishes that, "by a preponderance of

---

itself—provides no other relief to the convicted person. Instead, he must seek relief in another forum: this Court, in the guise of a post-conviction application for writ of habeas corpus. *See Whitfield*, 430 S.W.3d at 409 ("In the system that the statutes have created, after a final decision of a court of appeals of a DNA-testing appeal in a non-death-penalty case, the results of the proceeding may be used for an application for post-conviction habeas-corpus relief under Article 11.07.").

Suppose an inmate filed an initial Article 11.07 writ application alleging that new DNA testing *would* prove his innocence, but he had not yet sought such testing. Suppose that only after we denied relief did he seek DNA testing, and that he then obtained a favorable result. Suppose he then filed a subsequent writ application and alleged "new law" in the form of the convicting court's favorable determination that "it is reasonably probable that [he] would not have been convicted." Suppose, further, that the technology of DNA testing had not advanced during the interim, and that he could not, therefore, reasonably invoke Article 11.073 as a new "legal basis" for relief. *See Ex parte Kussmaul*, 548 S.W.3d 606, 633 (Tex. Crim. App. 2018) ("[Applicants] rely on a legal basis, Article 11.073, that was unavailable on the date [they] filed their previous applications."). Would this Court still say that "the legal basis" for his claim could not have been reasonably formulated before he filed his initial writ application? After all, he already made an actual innocence claim in that initial application, and nothing prevented him from seeking DNA testing under Chapter 64 before he filed it.

the evidence, but for a violation of the United States Constitution[,] no rational juror could have found the applicant guilty beyond a reasonable doubt." TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(2). We are not called upon to determine whether Applicant should be permitted to proceed with his claim by virtue of this provision, however. Applicant does not cite it in any of his pleadings as a ground for proceeding under Section 4.

This Court has made it clear in the past that, even with respect to post-conviction applications for writs of habeas corpus that are prepared *pro se*, "as a court of law we may not create claims that the Court *sua sponte* believes meritorious when they are not arguably present in an applicant's pleadings." *Ex parte Carter*, 521 S.W.3d 344, 350 (Tex. Crim. App. 2017); *Ex parte Hicks*, 640 S.W.3d 232, 235–36 (Tex. Crim. App. 2022) (Yeary, J., dissenting). Especially because Applicant is now represented by able counsel, this Court should not *sua sponte* "create" Applicant's arguments for him even if it thinks those arguments would have merit. Because Applicant himself offers no argument why he should be allowed to proceed under Article 11.07, Section 4(a)(2), I would not reach out and hold that he may.

## VI. CONCLUSION

For these reasons, I would dismiss Applicant's subsequent post-conviction application for writ of habeas corpus as failing to satisfy the strictures of Section 4 of Article 11.07. Because the Court does not, I respectfully dissent.

**FILED:**                                             May 1, 2024
**PUBLISH**