**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00313-CR
NO. 09-23-00314-CR
_____

**REGINALD GUILLORY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause Nos. F22-40303, F22-40305**

**MEMORANDUM OPINION**

A jury convicted Reginald Guillory of two counts of aggravated assault against two police officers, Derek Jennische and Nicholas Lamb. *See* Tex. Penal Code Ann. § 22.02(a)(2). The jury assessed punishment at twenty-five years' incarceration in the Texas Department of Criminal Justice on each count; the judge sentenced him accordingly and ordered the sentences be served concurrently. In three issues on appeal, Guillory challenges the sufficiency of the evidence to support

1

the convictions, the trial court's response to a jury question, and evidentiary rulings during the punishment phase. We affirm.

**Background**

**Derek Jennische**

Derek Jennische is a police officer with the Beaumont Police Department. On July 3, 2022, Jennische was on duty with his partner, officer Nicholas Lamb. The pair was dispatched to Glen Oaks Apartments in Beaumont for a "civil standby so Makhia Bell could collect some of her belongings from Apartment 39." Jennische explained that a civil standby is "where the one person calls the police to -- so that way they can gather either belong[ing]s or exchange belongings with another person while the police standby and make sure nothing goes wrong." Jennische arrived at the apartment complex, met Bell, and verified that she was at the apartment to collect her belongings. Jennische testified that on that day, he was in his police uniform with his badge visible. The officers then walked with Bell to a third-floor apartment, and Jennische knocked on the door and announced himself as a police officer. Jennische noted that the apartment door had a peephole. Jennische described his announcement as "loud and clear" and consistent with his training. Someone on the other side of the door asked who was there, and Jennische again "loud and clear" announced that he was a police officer. The person on the other side of the door then said "Huh?" and Jennische again announced "[l]oud and [c]lear" that he was a police officer for

2

a third time. According to Jennische, at this point, the door "swung open, and before me was a black male I saw in a white T-shirt, white tank top and just with a gun pointed straight at me." Next to this man, was another black male "holding a firearm[] as well." Jennische then heard "the click of a weapon as if the trigger was pulled and the firing mechanism was activated." After hearing the click of a gun, the individuals then immediately turned in the other direction into the apartment and ran out of sight, slamming the door behind them. Jennische then heard glass breaking. Jennische, pulled his gun, called for backup, and demanded that any residents of the apartment come outside and be detained. Eventually, two black males, Tyree Simon and Jalon Nixon, emerged from the apartment. Jennische testified that when Nixon came out of the apartment, his appearance was different, noting that "[a]t first, he was wearing a yellow tank top and he had long, just hair. It was distinct to tell the difference of hairstyles. And when he came out, he was wearing a white tank top, still that same distinct long hairstyle." Jennische and Lamb then entered the apartment. Once they entered the apartment, Jennische found a loaded 9mm gun on the floor and disabled it. Jennische then approached the living room of the apartment and observed "a clearly broken window that was large enough for someone to put themselves through." He described the man that pointed a gun at him as "a black male, dark skin, wearing a white tank top and a short hairstyle[,]" with a "short, stalky [sic] build[,]" and stated that Guillory matched this description. He agreed

3

that if Guillory had cuts during his police interview, the cuts could be consistent with someone jumping out of a window. A copy of Jennische's body camera video footage was admitted a trial and played for the jury.

During cross-examination, Jennische agreed that per police protocol, after he knocked on the door and announced his presence, he stepped to the side of the door. He also agreed that before trial, he did not describe the man who opened the door as stocky or stout. On redirect, Jennische stated that Nixon and Guillory did not have similar builds and hairstyles, noting that Nixon was taller and at that time his hair was much longer than Guillory's hair.

**Nicholas Lamb**

Nicholas Lamb is a police officer with the Beaumont Police Department and was with Jennische on July 3, 2022. When he arrived at Glen Oaks Apartments, he was in his uniform with his badge. Once he and Jennische arrived, they met with Bell and went with her to an apartment on the third floor. Once they reached the apartment, Jennische knocked on the door and announced themselves as police officers. He described Jennische's voice as "loud[,]" and "pretty stern[.]" He then heard a voice ask who was there, and Jennische again announced in "[a] little bit more elevated" voice that it was the police. After being questioned again by someone behind the door, Jennische announced their presence a little louder for a third time. Suddenly the door opened, and there "were several people standing in the doorway

4

and there was a firearm pointed at us." Lamb testified that initially he saw only one gun, but after reviewing body camera footage he observed two guns. Lamb stated he feared for his life. Lamb then "heard a metallic click" that "sounded like a dry fire of a pistol[,]" which he described as when "[s]omeone had pulled the trigger on a pistol and the mechanism activated but a round did not go off." Lamb then pulled his firearm and "tactfully withdrew[,]" the door immediately closed, and he heard breaking glass. In a very loud voice Lamb ordered the occupants of the apartment to come out. After several commands, Simon and Nixon exited the apartment. When Lamb and Jennische entered the apartment, they found a black semiautomatic pistol. Lamb then observed a broken window leading to the exterior of the apartment complex. He described the man who had the weapon when the door was open as "a black male, athletic-build[,]…a white shirt and dark-color pants of some sort[]" with short hair. A copy of his body camera video was admitted at trial and played for the jury.

**Gisela Villanueva**

Gisela Villanueva testified that she currently works as a manager at a restaurant located next to Glen Oaks Apartments. She testified that the restaurant has several cameras, including cameras from the front and rear of the business. Villanueva authenticated surveillance video from the restaurant on July 3, 2022, which was admitted and played for the jury.

**Heather Wilson**

Heather Wilson testified that she is a detective with the Beaumont Police Department. On July 3, 2022, she was notified by her supervisor "that two officers were involved in a situation where they were the victim[,] and I needed to respond." Wilson said she was instructed to interview several people at the scene. Wilson described the scene as "hectic" when she arrived and noted there was a large police presence. Wilson took the lead on the investigation. She observed the broken window during her walkthrough of the apartment and noted, "It appeared something had went out of the window from inside the building[,]" because "the way the glass kinda went out, and the blinds were out, as well. You could look down through the window and see the blinds and the shattered glass on the ground below." Wilson obtained the suspect's description who fled the scene, stating she was told he was a "[b]lack male, dark complexion, kinda stocky build wearing a white tank top, short haircut." She interviewed T.J. Landry, a tenant listed on the apartment lease and described him as "tall, slim. . . [with] hair that's kinda longer, braided style." She watched the surveillance video provided by Villanueva and stated there was an individual on the video that resembled Landry, noting it was clear the individual had long hair and a dark shirt. Another person appears on the video, and Wilson testified that person "appears to be [wearing] a white tank top[,]" and appeared to be running from Glen Oaks Apartments.

Eventually, two days after news of the incident and details of the investigation were released to the media, Wilson interviewed Guillory. Wilson identified Guillory in court as the man who appeared for the interview. She described Guillory's demeanor during the interview as "evasive, non-truthful at times." A video of the interview was admitted into evidence and played for the jury. Guillory stated that Landry was involved in a fight in the parking lot earlier in the day, and that Guillory held Landry's gun for him.

During his interview with Wilson, Guillory admitted that he was in Landry's apartment on July 3, 2022. He told Wilson that he heard a knock at the door but denied that he pointed a gun at the officers. He stated that he jumped out of the window because he saw guns and was scared. Guillory provided a name to corroborate his story, but Wilson was unable to verify the acquaintance or the story. During the interview, Guillory asked to see a video, which Wilson interpreted as an indication "[t]hey want to kinda get ahead of their story and kinda justify like that." She spoke about the different physical appearances between Nixon, Simon and Guillory, explaining, "Mr. Guillory is shorter than them, kinda stockier, kind of an athletic-build." Wilson testified that their "[h]airstyle is different, as well. Mr. Guillory had short hair at the time. And these two you can see has kinda the braided, longer hair." At the conclusion of her investigation, Wilson charged Guillory with aggravated assault against a public servant based on "the video itself[,] [and] [t]he

officers' body-worn camera video. It appears to be Mr. Guillory in the video. He matched the description provided that you see in the [restaurant] video and as we saw him in person, and, like I said, witness testimonies and the other occupants in the apartment place him there, as well."

**Michelle Ceja**

Michelle Ceja is a crime scene technician with the Beaumont Police Department. She explained her job duties include being "called out to different types of crime scenes, whether it's, you know, homicide, suicide, robberies[;] [a]nything that officers or detectives feel that my services may be needed[,]" including documenting, collecting, and photographing evidence. Ceja processed and documented the evidence collected on July 3, 2022, and copies of her photographs were admitted at trial. Included among the exhibits were photos of the apartment with its broken window below which were strewn broken glass, blinds and other debris. In addition to photographing the scene, Ceja took pictures of Guillory at the police station on July 5, 2022. The photos show cuts on Guillory's head and back.

At the conclusion of trial, the jury found Guillory guilty on both charges and subsequently assessed punishment at twenty-five years of incarceration on each charge; the trial court sentenced him accordingly and ordered the sentences to be served concurrently. Guillory timely appealed.

**Issue One**

In his first issue, Guillory argues the evidence was insufficient to support the jury's verdict because the State's witnesses "were unable to sufficiently identify appellant as the perpetrator of the offense." In any criminal prosecution, the State must prove beyond a reasonable doubt the defendant is the person who committed the offense. *McCullen v. State*, 372 S.W.2d 693, 695 (Tex. Crim. App. 1963). Direct, in-court identification, although preferred, is not required. *Purkey v. State*, 656 S.W.2d 519, 520 (Tex. App.—Beaumont 1983, pet. ref'd). Identity may be proven by direct or circumstantial evidence, combined with reasonable inferences. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Clark v. State*, 47 S.W.3d 211, 214–15 (Tex. App.—Beaumont 2001, no pet.).

The jury is the exclusive judge of the credibility of the evidence and the weight to be given to that evidence. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). As such, the jury is responsible for resolving conflicts in the testimony, is free to believe some, all or none of a witness's testimony, and may assign as much or as little weight to a witness's testimony as it sees fit. *Id*. Jurors may also draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. at 16.

When examining whether a criminal conviction is supported by legally sufficient evidence, we consider all the evidence, viewed in the light most favorable to the verdict, along with the inferences that could reasonably be drawn from the evidence. *See id.* at 13. We do not assess the credibility of the evidence, reweigh the evidence, nor substitute our judgment for that of the jury. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The evidence is legally sufficient to support the conviction if any rational trier of fact could have found each of the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citation omitted); *see also Garcia v. State*, 667 S.W.3d 756, 761–62 (Tex. Crim. App. 2023) (citation omitted) ("A proper review of evidentiary sufficiency considers the cumulative force of the evidence.").

Guillory admitted in his statement that he was in the apartment that day. Testimony showed that the police interviewed Nixon, Simon, and later Landry, and multiple witnesses described their appearances on the day in question. The jury also heard from multiple witnesses that one of the men holding a gun was short and stocky, wearing a white shirt, and had short hair, fitting Guillory's description and contrasting with the appearances of the other men in the apartment that day, all of

10

whom had noticeably distinct features. The jury could draw reasonable inferences from the fact Guillory jumped out of a third-floor window; it was not required to accept Guillory's explanation that he fled merely because he saw guns and was scared. Evidence of flight is circumstantial evidence from which the jury may reasonably have inferred guilt. *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989). The jury also viewed the video recordings from police body cameras as well as surveillance video from a nearby restaurant and could compare the person in the recordings with the person in the courtroom and decide whether he was the same person. Based on this record, we conclude the evidence is sufficient to prove beyond reasonable doubt that Guillory was the man who committed aggravated assault by pointing a deadly weapon at Officers Jennische and Lamb. We overrule issue one.

**Issue Two**

In his second issue, Guillory argues the trial court committed reversible error in instructing the jury regarding whether the sentences in his two cases would be served consecutively or concurrently. While the jury was deliberating Guillory's punishment it sent the trial judge the following note:

> If convicted (this is an example) of 20 years per offense, would Mr. Guillory serve 20 years or 40 (i.e., can he serve both terms at [the] same time or back to back?)

The trial judge told both the State and Defense that it would provide a reply, and the following exchange occurred:

11

[THE COURT]: After some discussion, it's my opinion that if I send in the law under Article 42.08(A), which …We're on the record right now. Which reads under Subsection A (Reading): When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction.

There's more to that section that does not apply and in my opinion would only serve to confuse the jury in this case. These were offenses from the same date. They cannot be served cumulative. So, that's my -- what I believe my ruling would be to send into the jury. Are there any objections to that?

[THE STATE]: None from the State, Judge.

[DEFENSE COUNSEL]: Defense objects.

THE COURT: Anything else?

[DEFENSE COUNSEL]: I object.

THE COURT: Based on? I mean, you don't have to say anything else. But do you have any –

[DEFENSE COUNESL]: I think it violates his due process. I object.

THE COURT: Okay. Then that is overruled. I will send that section of Article 42.08(A) into the jury.

Tracking the first sentence of Texas Code of Criminal Procedure article 42.08(a), the trial court instructed the jury, "When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction." *See* Tex. Code Crim. Proc. Ann. art. 42.08(a). After receiving this instruction, the jury reached its verdict and sentenced Guillory to twenty-five years on each conviction.

12

"When the trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction." *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1995) (citation omitted). We review alleged jury charge error using a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists in the charge, and if we find error, we review the record to determine whether the error caused sufficient harm to warrant reversal. *Id.* When, as here, the defendant properly objected to the charge, reversal is required if some harm to the defendant resulted from the error. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). In determining whether some harm resulted, "'the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Walker v. State*, 300 S.W.3d 836, 847 (Tex. App.—Fort Worth 2009, pet. ref'd) (quoting *Almanza v. State*, 686 S.W.2d at 171).

Sentences for multiple offenses may run consecutively or concurrently; however, a trial court's discretion is limited by section 3.03 of the Penal Code, which provides:

> When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a

13

sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently.

Tex. Penal Code Ann. § 3.03(a). The statute's definition of "criminal episode" includes two or more offenses that are "committed pursuant to the same transaction." *Id.* § 3.01. A defendant is prosecuted in a "single criminal action" whenever the allegations and evidence of more than one offense are presented in a single trial or plea proceeding. *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992), *overruled on other grounds by Ex parte Carter*, 521 S.W.3d 344, 347 (Tex. Crim. App. 2017).

Because Guillory's cases involved simultaneous commission of the same offense against two victims, his crimes arose out of the same criminal episode as defined by section 3.01. *See Cazarez v. State*, 606 S.W.3d 549, 563 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting Tex. Penal Code Ann. § 3.01(2)) (rejecting the State's argument that the offenses were not the same criminal episode because they involved different complainants); *see also Whaley v. State,* Nos. 05-18-01255-CR, 05-18-01257-CR, 2020 Tex. App. LEXIS 527, at *4–5 (Tex. App.—Dallas Jan. 21, 2020, no pet.) (mem. op., not designated for publication) ("When the gravamen of both offenses involves assaultive conduct committed by similar manner and means, the offenses are deemed part of the same criminal episode.").

Texas Penal Code section 3.03(b) allows sentences for certain offenses to run consecutively. Tex. Penal Code Ann. § 3.03(b). However, Guillory's crimes of aggravated assault in violation of section 22.02(a)(2) of the Penal Code are not included among the offenses listed in section 3.03(b). "[I]t is not for us to add or subtract to that which the Legislature has expressed." *Parfait v. State*, 120 S.W.3d 348, 350 (Tex. Crim. App. 2003). Because Guillory was prosecuted in a single criminal action for a single criminal episode involving offenses other than those enumerated in article 3.03(b), the trial court correctly instructed the jury pursuant to article 42.08(a) that Guillory's sentences would be treated as if he had been convicted of but one offense. Therefore, we conclude the trial court's response to the jury's question was not error, and we need not review whether any harm resulted. *See Almanza*, 686 S.W.2d at 171. We overrule Guillory's second issue.

### Issue Three

In his final issue, Guillory challenges the trial court's preventing him from presenting exculpatory evidence to the jury to counter the State's evidence that Guillory admitted he possessed a firearm on the day of the incident. During the guilt innocence phase of trial, Detective Wilson testified that during Guillory's police interview, he admitted to having held Landry's gun during a fight that occurred earlier in the day in the apartment complex's parking lot. The jury also heard the recorded interview. In response, the defense offered, and the trial court admitted,

15

Defense Exhibit One, a copy of Guillory's guilty plea in federal court for possession of a firearm, which included a document titled "FACTUAL BASIS" signed by Guillory, which states:

> On July 3, 2022, officers discovered a video on Facebook which depicted Reginald Guillory Jr. (Guillory) fighting with an individual outside of the Glen Oaks Apartments, located in Beaumont, Texas, in the Eastern District of Texas. In that video Guillory was seen possessing a firearm with an extended magazine. In a post arrest, post Miranda statement, Guillory admitted it was him in the video and the firearm he possessed in that video was a Taurus that belonged to a friend. Police recovered a Taurus, Model: C3C, 9mm caliber pistol, bearing serial number ABE550704, from the apartment of the friend Guillory had mentioned. Guillory knew it was the Taurus because he was holding it after the friend in the apartment whom it belonged to handed it to him. He also admitted to being on parole and knew he wasn't supposed to have a firearm.
>
> Prior to knowingly possessing the firearm on July 3, 2022, Guillory knew he was a previously convicted felon, having been convicted of:
>
> > • Retaliation, in the Criminal District Court of Jefferson, County, Texas, in cause number 19-32742, on January 1, 2022.

During the punishment phase of trial, Guillory testified about the charges and guilty plea in federal court:

[DEFENSE COUNSEL]: First off, I want to go -- State has alleged some other priors and some explanations in reference to those, okay?

A. Yes, sir.

Q. No. 1 is…that -- well, and Defendant's Exhibit No. 1. You're familiar with your felony, right?

A. Yes, sir.

16

Q. Based on this incident, were you also indicted for the felony?

A. Yes, sir.

Q. And based on that, that was referred to the U.S. Attorneys -- it is your understanding it was referred to the U.S. Attorney's Office, correct?

A. Yes, sir.

Q. The full -- the full incident, correct?

A. Yes, sir.

Q. Everything that was told this week, correct?

A. Yes, sir.

Q. And you were indicted, and it's still pending, right?

A. Yes, sir.

Q. You have not been finally sentenced for felon in possession of a firearm, correct?

A. No, sir.

Q. This. This charge in the federal is felon in possession of firearm, is it not?

A. Yes, it is, sir.

Q. That's pending?

A. Yes, sir.

Q. And the reason why, is it because of the retaliation conviction out of the CDC, Criminal District Court, next door?

A. Yes, sir.

17

Q. Remember that?

A. Yes, sir.

Q. Okay. And that's what they -- that's what they filed, right?

A. (Nodding head up and down)

Q. In fact, included in this, do you remember signing the factual basis. I show you the last page. Is that your signature?

A. Yes, sir, it is.

Q. Okay. So, you remember that?

A. Yes, sir.

Q. Also, inside the factual basis of Defendant's Exhibit No. 1 was the basis of why you accepted or you -- the plea deal, correct?

A. Yes, sir.

Q. And we heard your interview in reference to your -- I guess what you believe happened that day, July 3rd of 2022. Is it still all true and correct?

A. Yes, sir.

Q. Okay. And that the gun you had was JT's (sic), Landry's?

A. Yes, sir.

Q. During the fight?

A. Yes, sir.

Q. Okay. Now, you may not agree with what this jury has said, okay, but that's what we asked them to do, correct?

18

A. Yes, sir.

[…]

[THE STATE]: Okay. The federal charge that your attorney talked about, that is for a separate charge other than this case, right? Yes or no?

A. My federal charge?

Q. Yes, sir. That charge that -- in the federal court that says that you were a prohibited person when you possessed that firearm during that fight in the parking lot, that's not the aggravated assault against Officer Jennische or Officer Lamb, is it?

A. No, sir.

Q. Okay. So, if what your attorney's indicating or hinting at is that you have taken some type of a pop on the federal charge and somehow that should be mitigating or this jury should take that into consideration, they're two separate things. Is that fair to say?

A. It happened the same day within the same timeframe. So, it is relevant conduct, sir.

Q. All right. Fair enough. But two separate offenses?

A. Relevant conduct, sir.

Q. I'm not gonna argue with you. The last I'm gonna say on this then move on.

A. Yes, sir.

Q. You were charged in federal court with possessing a gun during a fight, and you're charged in here state court with pointing a gun at these two officers. Wouldn't you agree with me?

A. It's relevant conduct, sir.

[…]

[DEFENSE COUNSEL]: . . . Defense Exhibit No. 1, it was the same case, wasn't it?

A. Yes, sir.

Q. And there were the allegations of the police officers in this case –

[THE STATE]: Your Honor, I'm sorry. I'm –

Q. ([DEFENSE COUNSEL]) -- wasn't there?

A. Yes, sir.

THE COURT: Hold on.

[THE STATE]: That's a misrepresentation of the –

THE COURT: Let me see it.

[DEFENSE COUNSEL]: Your Honor, I –

THE COURT: Hold on. Let me read. I sustain the objection. That is a misstatement of the facts in the case.

[DEFENSE COUNSEL]: Your Honor –

THE COURT: Hold on.

[DEFENSE COUNSEL]: I need to put something on the -- for the record because I was the attorney of –

THE COURT: Let me finish what I'm going to say first.

[DEFENSE COUNSEL]: Okay.

THE COURT: This is evidence. It's Defendant's Exhibit No. 1. It's been admitted. The jury will be able to see it. But continuing to say that this right here that I'm holding, Defendant's Exhibit 1, has anything to

20

do with the offense that we're here for today I think is a misrepresentation, because this specifically only represents and has discussion of the earlier day in the day. So, if you'll put that back out there, and you can put what you need on the record.

[DEFENSE COUNSEL]: Can I put it on now, Judge?

THE COURT: Yeah, or on a break, whichever.

[THE STATE]: Can we do a bill in front of the jury?

THE COURT: No. No.

[THE STATE]: We do that outside of the presence.

THE COURT: Yeah. Yeah. We will do it after. We will take a break and you can -- keep in mind you can put a bill of review on as soon as we take a break.

Q. (BY [DEFENSE COUNSEL]) This happened on the same day, correct?

A. Yes, sir.

Q. That same firearm -- was that the same firearm that you placed on the table up there?

A. Yes, sir.

Q. Okay. And that's what you -- that's what you testified to?

A. Yes, sir.

Q. So, when they alluded to you, you did not agree with the State's rendition that the two incidents were not related. You disagree with that, right?

A. Yes, sir.

Q. They were related?

21

A. Yes, sir.

Q. Happened at the same time, same –

THE COURT: [Defense Counsel], I'm going to admonish you again –

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: -- and ask jury to disregard your last statement. You pass the witness?

[DEFENSE COUNSEL]: I pass the witness.

[ . . . ]

Guillory then made the following bill of exception:

[DEFENSE COUNSEL]: Q. Mr. Guillory, you were -- when -- you were indicted under the federal indictment, do you remember that?

A. Yes, sir.

Q. Enclosed in your discovery, was it also enclosed in reference to this charge in reference to the State, which was the aggravated assault on a public servant? Was that in your police reports in discovery?

A. Yes, sir. Exact same police reports. The exact same witness statements.

Q. And I represented you and I still am. I do represent you in that federal case, do I not?

A. Yes, sir.

Q. And as part of the negotiations, was it your understanding that these -- both the aggravated assault and the possession of a firearm stem from the same incident?

A. Yes, sir.

22

Q. Okay. And that that's what -- so, in your mind, it was all one?

A. Yes, sir.

Q. And through the discovery process or through negotiations, it was determined that they were only gonna file charges against you for felon in possession of a firearm?

A. Yes, sir.

Q. But when the State asked you whether or not they were two separate, that wasn't your recollection based on what you went through in the federal, and it was a mischaracter (sic) of the evidence in which you went through on the federal case compared to the State case?

A. Yes, sir.

[DEFENSE COUNSEL]: Pass the witness, Judge.

On appeal, Guillory complains, "The jury was not allowed to hear appellant's evidence that related to his admission to possession of a firearm earlier in the day in question, but not to threaten the officer." According to Guillory, the State's questioning confused him into conceding the federal charge for possession of a firearm was separate from the state charge for aggravated assault on the two officers, and the trial court's rulings prevented him from explaining to the jury that he considered the offenses to stem from what was "all one" incident in his mind.

We review a trial court's exclusion of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g); *Bisby v. State*, 907 S.W.2d 949, 952-53 (Tex. App.—Fort Worth 1995, pet. ref'd).

23

An abuse of discretion occurs when the trial court acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Montgomery*, 810 S.W.2d at 380. A trial court's ruling on the admission of evidence will be overturned only if the ruling is so clearly wrong that it lies outside the zone of reasonable disagreement. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). If the trial court's evidentiary ruling is correct on any theory of law applicable to the case, that ruling will not be disturbed even if the trial judge gave the wrong reason for the correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

That said, "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively preludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). *See* Tex. R. App. P. 44.2(b). We are to disregard erroneous exclusion of evidence if, after examining the entire record, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The record before us indicates other evidence was admitted regarding the fight in the parking lot, Guillory's holding Landry's gun during the fight, and the federal

charges, not only from Detective Wilson, but from video evidence, and Defense Exhibit One. Guillory was allowed to testify about the incident during the punishment phase of the trial. Guillory told the jury three times during cross-examination that he considered it "relevant conduct" since "[i]t happened the same day within the same timeframe." And on re-direct, Guillory was allowed to reiterate that he "disagree[d]" with the State's assertion that the two cases were not related.

Defendant's Exhibit 1 establishes the federal gun charge stemmed not from Guillory's possessing the gun while pointing it at the officers at the door of the apartment, but from Guillory's holding the gun during a fight in the parking lot earlier the same day. Since the federal gun charge is not the same as the aggravated assault charges for which Guillory was convicted, the trial court did not abuse its discretion when it sustained the State's objection to a leading question which asked Guillory to testify that "Defendant's Exhibit No. 1 . . . was the same case," nor when it instructed the jury to disregard Guillory's affirmative answer. For the same reason, and considering the question in context, we cannot say the trial court abused its discretion when it subsequently admonished counsel and instructed the jury to disregard Guillory's affirmative response to a second leading question asking whether the two cases were "related." But to the extent the trial court may have erred, we conclude any such error was harmless as the testimony would have been cumulative of all the other evidence the jury had already heard on the same topic,

25

including Guillory's previous answers that he considered the cases to be relevant to one another and that he disagreed with the State's assertion they were unrelated. *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (exclusion of cumulative evidence is harmless); *see also Valladarez-Martinez v. State*, No. 09-23-00049-CR, 2024 Tex. App. LEXIS 1649, at *10 (Tex. App.—Beaumont Mar. 6, 2024, no pet. h.) (mem. op., not designated for publication).

After examining the entire record, we have fair assurance that any error in the trial court's evidentiary rulings or instructions, including its exclusion of the evidence presented in Guillory's bill of exception, did not influence the jury or had but a slight effect, and was, therefore, harmless. Tex. R. App. P. 44.2(b). We overrule Guillory's third issue, and we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on March 26, 2025
Opinion Delivered August 13, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

26